122 N.J. Super. 68 (1973)
298 A.2d 725
LIBERTY MUTUAL INSURANCE COMPANY, A COMPANY, PLAINTIFF,
v.
KIERAN O'ROURKE, LOUIS GUNDLACH, FREDERICK BIFULCO, INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF FREDERICK VINCENT BIFULCO, FREDERICK VINCENT BIFULCO, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, A CORPORATION, STATE FARM FIRE AND CASUALTY COMPANY, A CORPORATION, ALL STATE INSURANCE COMPANY, A CORPORATION, AND FORD MOTOR COMPANY, A CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 8, 1973.
*70 Mr. Frank R. Cinquina for Plaintiff (Messrs. Schwartz and Andolino, attorneys).
Mr. George H. Harbaugh, attorney for defendants O'Rourke and Gundlach.
Mr. Stephen Leary for defendant State Farm Insurance Company (Messrs. O'Donnell, Leary & D'Ambrosio, attorneys).
Mr. Joseph M. Speidel for defendant Bifulco (Mr. Robert Fogelson, attorney).
Messrs. Friedman & D'Alessandro, attorneys for defendant Allstate Insurance Company.
Messrs. Morgan, Melhuish, Monaghan, Mc Coid & Spielvogel, attorneys for defendant Ford Motor Company.
STAMLER, J.S.C.
This matter is before the court on cross-motions for summary judgment requiring interpretation of an insurance policy in a declaratory judgment action. There is currently pending and awaiting this decision an action in the Law Division by an injured third party. On the return day of plaintiff's summary judgment motion, all defendants made cross-motions. This court, having been informed that the Law Division action was to be in the daily call on January 2, 1973, considered defendants' motions as timely made.
*71 In this action Liberty named as defendants Kiernan O'Rourke, Louis Gundlach, Frederick Bifulco, Frederick Bifulco's infant son, State Farm Fire and Casualty Insurance Company, State Farm Mutual Automobile Insurance Company, Allstate Insurance Company and Ford Motor Company.
The following are the undisputed facts essential to a determination in this case:
On June 11, 1969, the wife of Bifulco had been driving her children home in the family's Ford automobile. The car suddenly stalled in front of the house where Gundlach resided. After unsuccessfully attempting to restart the vehicle, Mrs. Bifulco asked Gundlach to assist her. Gundlach determined that the car was out of gas, secured some from his home and put it in the gas tank. The car still would not start. Gundlach and his son-in-law, O'Rourke, decided that the carburetor needed priming. As Gundlach sat in the driver's seat turning the engine over, O'Rourke with head and hands under the hood poured gasoline into the throat of the carburetor. An explosion occurred, igniting the gasoline container. O'Rourke threw the container away from him and into the face and body of Bifulco's nine-year-old boy, who received severe and disfiguring injuries.
At the time of the incident there was in effect a policy of automobile liability insurance issued to the boy's father by Liberty, which provided coverage on the Ford in the amount of $300,000. Bifulco gave prompt notice of this incident to the company. At this late date Liberty disclaims coverage and asserts that any insurance coverage must come from Allstate, which issued an automobile policy to O'Rourke, and from State Farm Auto and from State Farm Fire, which issued, respectively, an auto and homeowner's policy to Gundlach.
The Liberty policy contained the following pertinent provisions:
* * *

Persons Insured
Under the Liability and Medical Expense Coverages, the following are insureds:
(a) With respect to an owned automobile,

*72 (1) the named insured,
(2) any other person using such automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission. * * *

EXCLUSIONS
This policy does not apply: Under the Liability, Medical Expense & Accidental Death Benefit Coverage,
(g) to any automobile or trailer while maintained or used by any person while such person is employed or otherwise engaged in the automobile business, but this exclusion does not apply to the maintenance or use of an owned automobile (1) by the named insured or a relative, or (2) by any other insured in an automobile business in which the named insured has an interest as proprietor or partner;
It is Liberty's contention that neither Gundlach nor O'Rourke were "using" the car but instead were "maintaining" or "repairing" it. They allege this type of act is not covered by the above-quoted section. Liberty relies on a number of cases in foreign jurisdictions which it feels are dispositive of the issue raised here. Each is readily distinguishable.
In Gullickson v. Western Casualty & Surety Co., 17 Wis.2d 220, 116 N.W.2d 121 (Sup. Ct. 1962), the car was in a service station and the employee had the owner assist him by pouring gas into the carburetor while the service station mechanic turned the ignition. There it was held that it was not a "use" of the car by the owner of the service station or his employee. The court ruled that the service station liability policy for "maintenance" covered the accident.
However, this decision was based on facts judicially noted, that activities at a service station are different from occurrences elsewhere. The court stated:
It is common knowledge, and we take judicial notice of it, that the attendants at such stations are employed to render a variety of services to the traveling public to enable the patron of the service station to proceed on the journey which he has in mind. Among those services commonly rendered are to put gasoline in the tank of the car, check the oil, water and tire pressure and restore the proper levels in those respects if deficiencies are discovered, diagnose the causes of an unsatisfactory behavior by the automobile which the attendant is servicing and make minor repairs and adjustments to *73 improve its performance. We do not think the servicing of the motorist's automobile is a `use' of the car by the proprietor of the service station or his employee. Any motorist would be astonished to hear that his car is being `used' by the station attendant who is wiping the windshield, or filling the tank, or changing a spark plug, or adjusting a carburetor or attempting to start the motor. In our view such servicing is not a use of the automobile by the personnel of the station. [116 N.W.2d at 124; emphasis supplied]
In Graf v. Bloechl, 36 Wis.2d 635, 154 N.W.2d 340 (Sup. Ct. 1967), the court held that what occurred was an act of maintenance and not an act of use or operation. There had been an attempt to start a previously inoperable car, which had been towed to the service station for timing and testing of a rebuilt engine not yet completely assembled. The Supreme Court of Wisconsin said that "Under usual circumstances the starting of a motor vehicle would be considered an act reasonably related to the use of the vehicle." 154 N.W. at 342. However, the court went on to note that the usual facts were not present. The car was inoperable, starting the engine would not permit its use, further repairs were necessary, and the engine was not completely assembled. The court found that it could not have been Bloechl's intent to drive the auto after it was started. The primary intent and purpose in starting the auto was to finish the repairs.
Chase v. Dunbar, 185 So.2d 563 (La. Ct. App. 1966), is a case that is slightly closer to the facts at bar. In Chase a bystander was struck by a can of flaming gasoline tossed aside by an unidentified party attempting to start an automobile in the same manner as was tried by O'Rourke. The insurance policy had a clause exactly like the one in the Liberty policy. However, the court held that it was "maintenance" rather than "use":
The actions of the mechanics herein were in essence a test to determine whether the engine could be made to run or whether adjustments or repairs were necessary to make it functional. We hold, therefore, that the attempt to start the vehicle under the circumstances shown constitutes "maintenance" rather than "use" and such *74 activity was not insured against since the policy in question afforded no coverage to an individual engaged in maintaining the insured vehicle. [at 570; emphasis supplied]
The court in Chase held that each case had to be considered in light of its own particular facts and circumstances and that the intent, purpose and objective of the actor were important considerations. In the case at bar Gundlach and O'Rourke were not starting the car to test it for possible needed repairs. They were restarting Mrs. Bifulco's automobile so that she could continue on her way home.
The New Jersey courts have taken a different approach to this problem. In Unsatisfied Claim and Judgment Fund Bd. v. Clifton, 117 N.J. Super. 5 (App. Div. 1971), the owner of an automobile left the vehicle at a service station for repair. While an employee of the service station was raising the car on a lift, the auto slipped and injured a helper of the employee (a non-employee). The court held that when a customer's policy covered any person using his auto, with his permission and within the scope thereof, a clause excluding coverage, if the automobile were used by a person engaged in the automobile business, was invalid.
The court reasoned:
[The repairman], as a permitted user under the terms of the omnibus provision, was entitled to protection under the policy for the duration of his permitted use. We see no sound policy why such rights should be lost, abridged or suspended during the period of permitted use simply because the permittee may arguably have been engaged in the automobile business. [Defined as repairing, servicing, selling, storing or packing autos.] To hold otherwise would have the effect of denying to injured persons the possibility of recovering for their damages. [at 9]
If an insurance company cannot use a specific exclusion clause to exclude from an omnibus clause the repairs to an automobile, how can it do so by limiting the meaning of the word "use" in light of the rules of construction of insurance policies which dictate a reading favoring the insured. See State Farm v. Zurich Am. Ins. Co., 118 N.J. *75 Super. 84 (App. Div. 1972). N.J.S.A. 39:6-46(a) requires that all liability insurance policies shall "insure the insured named therein and any other person using or responsible for the use of any such motor vehicle with the express or implied consent of the insured." * * * An automobile liability policy must meet the minimum standards as set forth in N.J.S.A. 39:6-46 to 48. Selected Risks Ins. Co. v. Zullo, 48 N.J. 362 (1966).
For the omnibus clause to be effective all that is needed is a permissive use. All parties agree that O'Rourke and Gundlach had the permission of Mrs. Bifulco. On the meaning of the omnibus clause, see Capece v. Allstate Ins. Co., 86 N.J. Super. 462 (Law Div. 1965).
In construing automobile liability insurance policies such contracts are to be construed liberally in favor of the injured and insured. Matits v. Nationwide Mutual Ins. Co., 33 N.J. 488 (1960); Indemnity Ins. Co. v. Metropolitan Cas. Ins. Co. of N.Y., 33 N.J. 507, 513 (1960), where the court said that "use" is broader than "operation."
If the controlling language of a policy supports two meanings, that sustaining coverage will be applied. Bryan Const. Co. Inc. v. Employers' Surplus Lines Ins. Co., 60 N.J. 375, 377 (1972); Chicago Ins. Co. v. Security Ins. Co. of Hartford, 111 N.J. Super. 291, 295 (App. Div. 1970); See Gronquist v. Transit Casualty Co., 105 N.J. Super. 363, 366 (Law Div. 1969), where Judge Fulop refers to a number of cases in other jurisdictions which broaden the meaning of "use."
In the case at bar Mrs. Bifulco was on her way home when her automobile stalled. Gundlach and O'Rourke were restarting the engine at Mrs. Bifulco's request so that she could continue on her way home. It is reasonable to describe this activity as a "use" of the automobile within the meaning of the omnibus clause of the insurance policy.
It is concluded that judgment be entered declaring that the acts of Gundlach and O'Rourke were covered by the policy of Liberty.
*76 Despite the court making a determination that would dispose of this case, it is advisable for a trial court to consider affirmative defenses. The question of estoppel raised by defendants clearly demonstrates the abuse by insurance carriers of the declaratory judgment procedure. See Zurich Ins. Co. v. Rombough, 384 Mich. 228, 180 N.W.2d 775 (Sup. Ct. 1970); Allstate Ins. Co. v. Mahan, 223 Tenn. 496, 448 S.W.2d 392, 394 (Tenn. Sup. Ct. 1969) Certainly an insurance company is entitled to have its day in court. However, it should not be dilatory in seeking relief.
Liberty was notified by its insured of the accident shortly after June 11, 1969.
On October 6, 1970 the complaint in the Law Division was filed. Shortly thereafter Liberty assumed the defense of three defendants by filing answers. The suit was later dismissed as to Mrs. Bifulco, but Liberty continued to represent Gundlach and O'Rourke.
On June 9, 1972 this declaratory judgment suit was filed by Liberty. A motion by Liberty made in the Chancery Division action for a stay of the Law Division action was denied on July 19, 1972. Discovery proceeded in the Chancery Division suit and it was not until December 14, 1972, on the very threshold of trial, that Liberty moved for summary judgment returnable December 22, 1972.
The questions presently raised by Liberty in its declaratory action could have been formulated in December of 1970 based on facts known in full to Liberty at that time. The present action could have and should have been filed then and a motion for summary judgment could have been decided in early 1971. This would have established Liberty's obligations as to defense and coverage in the negligence action at a date in which the negligence action could have proceeded without unnecessary delay. Even if it could be said that the declaratory judgment action was timely filed in June 1972, the summary judgment action was still not forthcoming. This motion, presenting a question of novel impression in this jurisdiction, could have been brought in early *77 July 1972 instead of just ten days before the negligence action was to begin. The result was to again ask for delays in a case nearly three years old.
In this special type of situation the usual requirement of a showing of prejudice is unnecessary. Merchants Indemnity Corp. v. Eggleston, 37 N.J. 114 (1962); Sneed v. Concord Ins. Co., 98 N.J. Super. 306 (App. Div. 1967). It is three years after the accident of which Liberty was timely notified, and 16 months after Liberty assumed control of the defense of the two principal actors. (There is a products liability claim against Ford Motor Company which is not relevant to this decision.) All discovery had been completed. Certainly State Farm and Allstate had every right to believe that the defense and coverage of Gundlach and O'Rourke had been accepted by Liberty.
With trial set for the first week in January, Liberty asks that it be relieved from the duty to defend and the duty to pay. The attempted substitution comes too late.
In Hanover Ins. Group v. Cameron, 122 N.J. Super. 51 (1973) an opinion also decided by this court, the effect of such tactics upon the injured parties and upon the trial calendar is considered.
Had I not found for defendants on the main complaint, I should have concluded that Liberty is estopped to deny coverage. This determination will also be incorporated in the form of judgment.
Costs against plaintiff.