405 So.2d 190 (1981)
VOLKSWAGEN INSURANCE COMPANY, Continental Insurance Company, and James E. Fulton, Jr., M.D., Appellants,
v.
DUNG BA NGUYEN, Appellee.
Nos. 79-2330, 80-60 and 80-202.
District Court of Appeal of Florida, Third District.
September 8, 1981.
Rehearing Denied November 12, 1981.
*191 Batchelor, Brodnax, Guthrie & Primm and Robert A. Freyer, Corlett, Merritt, Killian & Sikes, Daniels & Hicks and Mark Hicks, Smathers & Thompson and George Volsky and Jose R. Garcia-Pedrosa, Peters, Pickle, Flynn, Niemoeller, Stieglitz & Hart and Stephen A. Stieglitz, Miami, for appellants.
Podhurst, Orseck & Parks and Joel D. Eaton, Rossman & Baumberger, Miami, for appellee.
Lee, Schulte, Murphy & Coe, Miami, for Holyoke Mut. Ins. Co. In Salem as amicus curiae.
*192 Before HUBBART, C.J., and BARKDULL and NESBITT, JJ.
BARKDULL, Judge.
The plaintiff, Dung Ba Nguyen (hereinafter referred to as Ming) was injured as a result of a freak accident.
At the time of the accident, Ming was employed by AHC Pharmaceutical (hereinafter referred to as AHC). This company produced medications; it is wholly owned by Dr. James E. Fulton, Jr. and his wife. Fulton and his wife are also the sole shareholders of Florida Growers Nursery (hereinafter referred to as Fla. Growers). Fulton also owns James E. Fulton, Jr., M.D., P.A.
On Friday, October 21, 1977, Dr. Fulton's secretary asked Ming to work Sunday, October 23. Ming was requested to move certain items from AHC's prior address to its then location; he was also to help Fulton move furniture from his residence on Key Biscayne to Fla. Growers for storage because the doctor was preparing to move to California. Ming arrived at AHC on Sunday, the 23rd, where he was met by Fulton and another AHC employee, Charles Franklin. The three men went across the street to a vacant lot, where a "stake" truck belonging to Fla. Growers had been parked for about six months. It wouldn't start so they had to "fix it". Ming installed a battery and Franklin then unsuccessfully attempted to start the engine. The men decided that the truck was either out of gas or it had water in the gas tank. Fulton sent Ming back to AHC to get a can of gasoline. Upon his return, Ming poured gas in the tank and gave Fulton a small cup of gas. Franklin attempted to start the truck while Fulton poured some gas in the carburetor. After about the third or fourth attempt to start the truck by pouring gas into the carburetor, the gas burst into flames and the small cup of gas Fulton was holding caught fire. Fulton immediately threw the cup which struck Ming in the chest, resulting in burns to Ming.
This action was commenced by Ming, claiming damages for personal injuries from Fla. Growers, Fulton and Continental Insurance Company (hereinafter referred to as Continental). In the second amended complaint, it was alleged Fulton negligently threw burning gasoline on Ming while he (Fulton) was pouring gas into the carburetor of a trucked owned by Fla. Growers. The complaint alleged Continental provided liability insurance coverage for Fulton. Fulton answered and filed a crossclaim against Continental, claiming insurance coverage for the accident under a homeowner's policy issued to him and his wife, covering their Key Biscayne home. Fulton, further, filed a third party complaint against Volkswagen Insurance Company (hereinafter referred to as VICO), claiming coverage under his automobile policy insuring his private automobile. VICO answered the third party complaint, alleging no coverage on the grounds that the accident did not arise out of the maintenance and use of an automobile and that, if so, coverage was excluded because the truck was available to Fulton for his regular use and was not in VICO's policy, and that the accident occurred while Ming was employed or engaged in a business. Fulton, additionally, filed an amended crossclaim against Continental for coverage for the accident under a Special Multi-Peril policy (hereinafter referred to as SMP). Continental denied coverage under both of its policies. During the proceedings, a notice of lien was filed by Cosmopolitan Insurance Company, who paid workmen's compensation benefits to Ming for the accident.[1] Fulton, VICO, and Continental each moved for summary judgment on the insurance coverage issues.
The trial court held that both Continental's homeowner's policy and its SMP provided coverage for this accident. He also held that VICO had coverage under its automobile policy. He denied Continental's and VICO's motions. A declaratory judgment for coverage was entered in favor of Fulton relative to the Continental policies and in favor of Fulton on the VICO policy.
*193 The claim of Ming proceeded to trial and, pursuant to a jury verdict, final judgment was entered awarding him damages in the amount of $350,000.00 against Fulton and Continental.[2]
Motions for rehearing and for new trial were filed by Continental, asserting, inter alia, that newly discovered evidence revealed that the SMP policy had been cancelled prior to the date of the accident. The court denied the motions for rehearing and for new trial,[3] and these appeals followed.
This is a consolidation of the following three appeals:
1. Notice of appeal filed by VICO in Case No. 79-2330 was directed to the declaratory judgment against it as a third party defendant, relating to insurance coverage under Fulton's automobile policy.
2. Notice of appeal filed by Fulton in Case No. 80-60, which was directed to the final judgment in favor of Ming for $350,000.00 and against defendants, Fulton and Continental, and the order denying defendant's motion for judgment in accordance with motion for directed verdict and motion for new trial.
3. Notice of appeal filed by Continental in Case No. 80-202, which was directed to the final judgment in favor of Ming and against the defendants, Fulton and Continental, and the declaratory judgment relating to insurance coverage.
No point on appeal is made by any of the defendants as to the liability of Fulton, although a point is made as to the damages being excessive. The other points preserved relate to the question of coverage under the several insurance policies involved.
We find no error in denying the motion for new trial upon the ground that the jury award was excessive. See: Talcott v. Hall, 224 So.2d 420 (Fla.3d DCA 1969); Seaboard Coast Line Railroad Company v. McKelvey, 259 So.2d 777 (Fla.3d DCA 1972), affirmed 270 So.2d 705 (Fla. 1973); Bould v. Touchette, 349 So.2d 1181 (Fla. 1977).

VICO POLICY
We find no coverage under this policy for the following reasons:
The VICO policy contains a clear exclusion that no coverage is provided to "non owned" automobiles if it is furnished or available for the insured's regular use, as follows:
"9. For the ownership, maintenance or use of any vehicle, other than your covered auto, which is owned by you or furnished or available for your regular use."
The purpose of the exclusion and the reason why it has been found valid is that an insured cannot insure one vehicle and then have his policy cover all other vehicles which are available to him and in which he has an interest.
Fulton, in the third party complaint, alleged coverage under VICO's "non owned automobile" provision. The purpose of such provision is to cover the insured while "engaged in infrequent and casual use of an automobile other than the one described in the policy". Henigson v. Davis, 305 So.2d 86 (Fla.4th DCA 1974). However, no coverage would be afforded to Fulton relative to any automobile or vehicle if it was owned by him or furnished or available for his regular use.
The 1962 truck had been owned by Fulton and transferred to Fla. Growers. The corporation was inactive in 1977 and Fulton was the only person with the keys to the truck. He had sole and complete control over the truck and testified that it was available for his use at any time. Fulton periodically started the truck and kept it because he still owns a ranch and might *194 have some use for the truck. The only reason title to the truck had not been changed from Fla. Growers back to Fulton was that he did not want to pay the transfer fee and he simply had not gotten around to it.
In the recent case of Fidelity & Casualty Co. of New York v. Fonseca, 358 So.2d 569 (Fla. 3d DCA 1978), cert. denied 365 So.2d 711 (Fla. 1978), the court held that where the defendant (wife) was driving her husband's car no coverage was provided under the wife's policy since the husband's car was not "non owned" as it was furnished for her regular use.
Fulton urges that the truck had been sitting for six months and for this reason could not qualify as being furnished or available for "regular use". This argument overlooks the provision of the policy and the exclusion which is applicable if a non owned vehicle is available or provided for regular use it is excluded. In Fonseca, supra, the court noted that a vehicle did not qualify as "non owned" if it was potentially available for use on a regular basis, whether or not the vehicle was actually used. Fulton could have used the truck any time he wanted to; the truck was available to Fulton and only to Fulton. See, also: Insurance Company of North America v. Ready, 240 So.2d 311 (Fla.3d DCA 1970), where no coverage was provided because the vehicle driven by the insured was owned by his wife and was furnished for his regular use.[4]
In Duprey v. United Services Automobile Assoc., 254 So.2d 57 (Fla. 1st DCA 1971), the insured was involved in an accident while driving her brother's automobile. The insured automobile had been used by the insured's husband to drive to Alabama for six weeks, returning home on weekends. The insured wife used her brother's car for five or six weeks and she had almost unrestricted use of the brother's automobile. The appellate court, in affirming the summary judgment for the insurer, held that the undisputed facts demonstrated that the brother's automobile had been available to the insured for her regular use.
In the present case, on the date of the accident, Fla. Growers was inactive and had no employees; the only survivors of that corporation were Fulton and his wife. Fulton was the only person who had keys to the truck and who could give permission for it to be driven or operated.
VICO issued its policy insuring Fulton's private passenger vehicles garaged at his house. Even if the vehicle was "non owned" it was still excluded under VICO's Exclusion No. 7, relative to using a vehicle while engaged in a business or occupation, which reads as follows:
"7. For any person maintaining or using any vehicle while that person is employed or otherwise engaged in any business or occupation not described in Exclusion 6. This exclusion does not apply to the maintenance or use of a pick-up, sedan delivery or panel truck that you own."[5]
At the time of the accident, Fulton and Ming were engaged in the business or occupation of AHC and in the job of moving furniture that Fulton owned individually. Fulton and Ming cannot argue that the accident was not "business" related since Ming has successfully filed a workmen's compensation claim and was paid compensation benefits; he was also being paid by his employer, AHC, to work overtime.[6]
The case of Battle v. Coleman, 336 So.2d 140 (Fla. 1st DCA 1976) supports VICO's position relative to the business exclusion. The insured was a member of a band and was driving a van used by the band and which was equally owned by the band members. The van was titled in the name of a friend of the leader of the band. The court *195 held that both the "used in the insureds business or occupation" and "furnished for regular use" exclusions were valid as the van, at the time of the accident, was being driven by the insured who regularly drove the van while engaged in his business or occupation. The court, at page 141, stated:
"It would be grossly unreasonable to think that either the insured or the insurer, upon the issuance of the liability insurance policy covering Coleman's private automobile, contemplated that such coverage extended to the vehicles equitably owned and operated by Coleman and his fellow band members in pursuit of their business."

CONTINENTAL'S HOMEOWNER'S POLICY
We find no coverage under this policy for the following reasons:
This policy provides coverage for personal liability to third parties. The policy contains an exclusion which specifically precludes coverage for the "maintenance", "operation" or "use" of a motor vehicle. The exclusion reads as follow:
This policy does not apply:
... a. to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:
... .
... (2) any motor vehicle owned or operated by, or rented or loaned to any Insured ..." (emphases supplied)
The attempt to start the truck by pouring gas into the carburetor, which resulted in the ignition of the gas, involved the "maintenance" of the vehicle within the terms of this exclusion.
The term "maintenance" has recently been so interpreted by the Fourth District Court of Appeal in connection with a homeowner's policy exclusion similar to Continental's. Indiana Insurance Co. v. Kip Winston, 377 So.2d 718 (Fla. 4th DCA 1979). There, the plaintiff assisted the defendants in removing the hood of a car to modify it to accommodate an air scoop. The hinges remained attached to the car and they were depressed by defendants in the position they would have been if the hood were closed. Plaintiff leaned on the vehicle and suddenly one hinge released, striking him in the eye. Plaintiff sued the automobile carrier, which covered "maintenance" of the vehicle, and the homeowner's insurer, which excluded "maintenance" of the automobile. In finding that the exclusion applied, the court stated that "... we do not believe an ambiguity exists here". The court further held that:
"Thus, as a general proposition, it can be said that but for the maintenance of the hood hinge, an integral part of the automobile involved herein, the injury would not have occurred.
Finally, while we acknowledge that the injured party in this case was not himself actively engaged in the maintenance of the car at the time of the injury, we still believe his injury arose from a condition created during the maintenance of the vehicle. The term `maintenance' has been defined as the labor of keeping something in a state of repair or efficiency. See Truck Ins. Exchange v. Aetna Cas. & Sur. Co., 13 Wash. App. 775, 538 P.2d 529 (1975) and cases cited therein. Appleman, in his treatises, indicates that the term maintenance would seem to include acts of either commission or omission relative to the external or mechanical condition of a vehicle. 6B Appleman, Insurance Law and Practice, Sec. 4315, p. 339. We find that the control and subsequent placement of the hinge played an inseparable role in the installation of the air scoop, whose installation can be defined as the maintenance of the automobile (i.e., it keeps the vehicle in a state of efficiency)."
Here, as in Winston, supra, but for the maintenance of the carburetor, the injury to Ming would not have occurred. In addition, it was not necessary for Ming to participate in the actual pouring of the gas into the carburetor for the exclusion to apply. The section of Appleman, cited by Winston, also provides that:

*196 "`Maintenance' covers all acts which come within its ordinary scope and meaning... . Similarly, negligence in cleaning the automobile or in negligent use of the carburetor would be covered under this rule."
7 Appleman, Insurance Law and Practice § 4315 (emphasis supplied)
Since the term "maintenance" was held to be unambiguous, authorities using that term with reference to an automobile policy's insuring clause are also persuasive.[7]
If pouring gas into a carburetor involves its maintenance for purposes of an insuring clause, the same definition would exist for an exclusion because the term is not ambiguous. Winston, supra. Accordingly, since the pouring of gas in the carburetor was done for the purpose of starting the truck, resulting injuries suffered by Ming arose out of the maintenance of the vehicle.
The attempt to start the truck constitutes a "use" of the vehicle. In this connection, see: National Indemnity Co. v. Corbo, 248 So.2d 238 (Fla.3d DCA 1971). There, a dog bit the plaintiff while being transported in an automobile. The automobile liability carrier appealed a summary judgment against it which found coverage for an accident under its insuring agreement containing the language "... arising out of the ownership, maintenance or use of the automobile". In addition, the trial court granted a summary judgment in favor of the insurer, which issued a homeowner's policy excluding "maintenance", "operation" or "use" of a vehicle. In affirming the trial court's orders, we reasoned that:
"`Use' extends to any activity involved in the utilization of the covered vehicle in the manner intended or contemplated by the insured. St. Paul Fire & Marine Ins. Co. v. Hartford Acc. & Indem. Co., 244 Cal. App.2d 826, 53 Cal. Rptr. 650.
Appellant contends that there is a distinction between the construction of basic coverage provisions which obtains in its automobile liability policy, and exclusions or exceptions to coverage in Gulf's homeowner's policy, and a stricter rule of construction applied when coverage is excluded.
We accept appellant's premise that exclusionary clauses are narrowly construed against the insurer but reject the attempted application to this case, observing that while rules of construction are applied where there is doubt or ambiguity, plain language requires no construction.
... .
We conclude that the injury involved in this case arose out of the use of the automobile and within the coverage afforded by appellant's liability policy. Thus it follows that Gulf's policy does not afford coverage."
If a dog bite suffered inside a car involves a "use" of the car excluded by a homeowner's policy, there is further justification for holding that the act of attempting to start the truck by putting gas into the carburetor is a "use" of the vehicle within the exclusion. In this regard, see also Atkins v. Bellfonte Insurance Co., 342 So.2d 837 (Fla.3d DCA 1977). There, a child was struck by an automobile owned by a school. The school allegedly was negligent in allowing the minor to escape from the school and in improperly handling him in returning to the school. Under these allegations, the trial court dismissed the school's insurer, whose policy contained an exclusion for the "maintenance", "operation" or "use" of an automobile. We affirmed, holding that:
"... plaintiff's damages resulted from the use of a motor vehicle. Not only was the plaintiff's damage a primary consequence of the School's use of the motor vehicle, but also it could not have occurred without the use of the School's motor vehicle."
In the present case, the gas would not have been ignited and thrown at Ming without the use of the vehicle. The Fourth District Court of Appeal, in National Indemnity *197 Co. v. Corbo, supra, also held that the term "use" is not ambiguous. Therefore, authorities interpreting the term in the context of an insuring clause are again persuasive.[8]

CONTINENTAL'S SMP POLICY
Further, we do not find coverage under this policy, issued to Fulton, P.A., for the following reasons:
The insuring agreement is found in Section II, Coverage C, which provides, in part, as follows:
"... caused by an occurrence and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental to the business of the named insured conducted at or from the insured premises ..."
The accident which occurred in this case did not involve ownership, maintenance or use of the premises of Fulton's P.A. (the named insured) and it was not incidental to the business of Fulton's P.A. Instead, it was incidental to AHC's business and Fulton's private purposes.
In Peirson v. American Hardware Mutual Insurance Co., 249 N.C. 580, 107 S.E.2d 137 (1959), an insured sued its insurer under a "Garage Liability Policy" to recover medical expenses paid by him for injuries suffered by the insured's wife in an automobile accident. The policy was issued to a retail hardware business and to a retail farm equipment business. The automobile involved in the accident was owned by the insured and used for personal and business transactions. At the time of the accident, the car was being used for personal purposes. The policy contained an insuring clause which provided coverage for the ownership, maintenance or use of the premises for the purpose of a service station or garage and all operations "... necessary or incidental thereto...". In finding that there was no coverage, the court stated that:
"Incidental, obviously, means depending upon or appertaining to something else as primary... . Incidental, in my view, means incident to the main purpose of the main business.
... .
"... the definition of incidental in Black's Law Dictionary: Depending upon or appertaining to something else as primary; something necessary, appertaining to, or depending upon another which is termed the principal; something incidental to the main purpose.
... .
"Since plaintiff's automobile was not used principally in the business of repairing, servicing, etc., for which protection is provided by the policy and the mercantile business operated by plaintiff as an individual is neither necessary nor incidental to the business of repairing, servicing, and storing protected by the policy; it follows that, upon established facts, no liability rests on defendant."[9]
The moving of materials for AHC and furniture for Fulton are not incidental to the business of Fulton's P.A. There is no coverage. This was issued to James E. Fulton, Jr., P.A. Dr. Fulton's professional association was not sued in this case. Under the policy definition of "Persons insured", the following appears:
"Each of the following is an insured under this insurance to the extent set forth below:
... .
(c) If the named insured is designated in the Declarations as other than an individual, partnership or joint venture, the organization so designated and any executive officer, member of the board of trustees, directors or governors or stockholders thereof while acting within the scope of his duties as such; ..."
*198 Accordingly, Fulton would be a named insured as an officer of the P.A. "... while acting within the scope of his duties as such;...". In the present case, Fulton was not performing duties for the professional association at the time of the accident. Instead, he was starting a truck owned by Fla. Growers, which was going to be used to transport personal items as well as materials belonging to AHC. There is no coverage under the SMP policy.[10]
Ming contends this case is controlled by Daleo v. Bert & Betty Bayfront 66 Marine, 273 So.2d 113 (Fla.3d DCA 1973), quashed on other grounds in 282 So.2d 169 (Fla. 1973). We have considered this opinion at length and cannot distinguish it on the facts. We therefore recede from this opinion and decision by holding, as indicated, that the injury to Ming did arise out of the "maintenance" or "use" of a motor vehicle. We realize that the Daleo opinion dealt with the "operation" as distinguished from "maintenance" or "use", although these terms were contained in the same exclusion discussed in that opinion.[11] We do not think that this is a significant difference which would make this case distinguishable on the facts. Therefore, as indicated, we recede from said decision.
In appeal No. 79-2330, we reverse the declaratory judgment finding coverage against VICO, with directions to discharge VICO from any liability.
In appeal No. 80-60, we affirm the final judgment in favor of Ming for $350,000.00 against the defendant, Fulton, and reverse as to Continental because of our holding in Case No. 80-202.
In appeal No. 80-202, we reverse the declaratory judgment finding insurance coverage by Continental, with directions to discharge Continental from all liability under both its homeowner's policy and its Special Multi-Peril policy.
Affirmed in part, reversed in part, and remanded with directions.
NOTES
[1] Cosmopolitan was the compensation carrier for AHC.
[2] The cause did not proceed against Fla. Growers as the owner of the truck. This party was dismissed by plaintiff prior to trial.
[3] We find no error in the trial court denying this motion for new trial, as it was well within his discretion, the motion coming after trial and attempting to allege a new affirmative defense See: Maryland Casualty Company v. Murphy, 342 So.2d 1051 (Fla. 3d DCA 1977).
[4] See and compare: Seaboard Fire and Marine Ins. Co. v. Gibbs, 392 F.2d 793 (4th Cir.1967); Wasilko v. Home Mutual Casualty Company, 210 Pa.Super. 322, 232 A.2d 60 (Pa. 1967).
[5] A "stake" truck is not a "pick-up, sedan delivery, or panel truck".
[6] See: McRae v. Snelling, 303 So.2d 670 (Fla.4th DCA 1974); Employers' Liability Assurance Corporation v. Owens, 78 So.2d 104 (Fla. 1955).
[7] See and compare: Chase v. Dunbar, 185 So.2d 563 (La. App. 1966); United Mutual Fire Insurance Co. v. Jamestown Mutual Insurance Co., 242 App.Div. 420, 275 N.Y.S. 47 (1934); 7 Appleman, Insurance Law and Practice, § 4315.
[8] Liberty Mutual Ins. Co. v. O'Rourke, 122 N.J. Super. 68, 298 A.2d 725 (1973); United Services Automobile Association v. United States Fire Insurance Co., 36 Cal. App.3d 765, 111 Cal. Rptr. 595 (1974).
[9] See and compare: Liberty Mutual Ins. Co. v. O'Rourke, 122 N.J. Super. 68, 298 A.2d 725 (1973); United Services Automobile Association v. United States Fire Insurance Co., 36 Cal. App.3d 765, 111 Cal. Rptr. 595 (1974).
[10] Even if Fulton were deemed to be an insured under the policy, coverage is precluded by the following exclusion:

"This insurance does not apply.
... .
(b) to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of
(1) any automobile or aircraft owned or operated by or rented or loaned to any insured..." (emphasis supplied)
In the present case, the truck was loaned to Dr. Fulton by Fla. Growers. In addition, as noted earlier in this opinion, the accident arose out of the maintenance or use of a vehicle.
[11] This was a two-to-one decision. In shepardizing this case, we have found that it has been cited several times for the proposition that ambiguities in an insurance policy are to be resolved in favor of the insured and against the insurer. However, it has never been cited for the proposition that the meaning of the word "operation" contained in the exclusions of an insurance policy was ambiguous and therefore coverage was to be afforded the insured.