982 So.2d 57 (2008)
Jose MARTINEZ, Appellant,
v.
CITIZENS PROPERTY INSURANCE CORPORATION, Appellee.
No. 3D07-88.
District Court of Appeal of Florida, Third District.
April 16, 2008.
Rehearing and Rehearing Denied June 12, 2008.
Steven R. Simon, Miami, for appellant.
James M. Fishman, Miami and William J. Karoly, Jr., for appellee.
*58 Before GERSTEN, C.J., and SHEPHERD and CORTIÑAS, JJ.
Rehearing and Rehearing En Banc Denied June 12, 2008.
CORTIÑAS, J.
Appellant, Jose Martinez (the "Insured"), seeks review of an order granting summary judgment in favor of Citizens Property Insurance Corporation (the "Insurance Carrier"). We review this matter de novo. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126 (Fla. 2000).
The Insurance Carrier issued a homeowner's insurance policy (the "Policy") to the Insured containing an exclusion which provided, in pertinent part:
Coverage L  Personal Liability and Coverage M-Medical Payments to Others do not apply to "bodily injury" or "property damage:"
. . . .
e. arising out of:
(1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured;"
When the injury that forms the basis of the underlying lawsuit occurred, Sergio Avila ("Avila") was renting a home (the "Property"), which was owned by the Insured. At some point during the tenancy, and while physically on the Property, Avila undertook preparations to change the oil in the Insured's automobile. Avila drove the automobile onto ramps on the Property's driveway and subsequently positioned himself underneath. Shortly after Avila was situated under the car, the concrete driveway suddenly collapsed, causing the vehicle to fall on him and resulting in injuries. Avila testified that, although he was under the automobile, he was merely "checking" it and had neither commenced the oil change nor touched the car. After the injury occurred, an action was brought by Avila against multiple defendants, including the Insured and the Insurance Carrier, alleging that personal injuries sustained on the Property were covered under the Policy. The Insurance Carrier subsequently filed the instant action for declaratory judgment seeking a determination that there was no coverage under the Policy. After discovery, the Insured and the Insurance Carrier each filed motions for summary judgment. The trial court ultimately granted the Insurance Carrier's motion for summary judgment on its declaratory action.
As part of its investigation of Avila's claim, the Insurance Carrier retained the services of Pepper Engineering Group (the "Engineer") to inspect the driveway and determine the cause of damage to the concrete patio slab. The inspection disclosed that a concrete slab failure occurred in the area where Avila and the automobile were situated. Although the applicable building code required a minimum four-inch thickness, the Engineer found that the concrete slab was approximately only two and one-eighth inches thick. The Engineer also determined that the slab lacked reinforcement, was missing wire mesh, and noted several old cracks across the patio slab with rounded and weathered edges containing paint.
The issue in this case is whether Avila's injuries can be classified as "arising out of . . . the ownership, maintenance, use, loading or unloading of motor vehicles." The Florida Supreme Court has reviewed exclusionary provisions containing the phrase "arising out of" and has "concluded that [the phrase] requires only `some level of causation greater than coincidence.'" Garcia v. Fed. Ins. Co., 969 So.2d 288, 293 (Fla.2007) (quoting Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So.2d 528, 533 (Fla.2005)). Accordingly, *59 "`[a]rising out of' are words of much broader significance then [sic] `caused by.' They are ordinarily understood to mean `originating from,' `having its origin in,' `growing out of' or `flowing from,' or in short, `incident to or having connection with' the use of the car." Ohio Cas. Ins. Co. v. Cont'l Cas. Co., 279 F.Supp.2d. 1281, 1284 (S.D.Fla.2003) (citing Nat'l Indem. Co. v. Corbo, 248 So.2d 238, 240 (Fla. 3d DCA 1971)).
In this case, the Engineer, which was retained by the Insurance Carrier, determined that that the crack in the concrete slab resulting in the accident was caused by the car wheel load. However, the record is clear that the Engineer further concluded that the crack would not have occurred if the slab had been properly constructed in accordance with the Florida Building Code. The broadest reading of the phrase "arising out of . . . the ownership, maintenance, use, loading or unloading of motor vehicles," does not encompass the factual scenario in this case. It is difficult to imagine a situation where a driveway incapable of supporting the weight of an automobile could be considered anything other than one that was defective or improperly constructed. Based upon the facts of this case, it appears that it was pure chance that the object upon the driveway at the time of its collapse happened to be a car. As such, the automobile became a mere instrumentality of the injuries to Avila, devoid of any causal connection to Avila's injuries. See Almayor v. State Farm Fire & Cas. Co., 613 So.2d 526, 527 (Fla. 3d DCA 1993).
In Almayor, we found that this type of policy exclusion did not preclude coverage despite the fact that the injuries occurred while a vehicle was being repaired. Almayor had, at the request of an insured, traveled to her home in order to "check out" and possibly repair her vehicle. While he was working on the car, Almayor siphoned gas out of the car and placed it in a bucket next to the side of the house. One of the residents, also an insured, then exited the house with a lit cigarette in hand, which ignited the gasoline fumes and caused an explosion, which seriously injured Almayor. This court reversed a judgment in favor of the insurer "on the ground that the accident `arose out of' [the resident's] negligent use of flammable material, not the ownership, maintenance, or use of the motor vehicle under repair. Indeed, the car had very little to do with the fire at all. It was merely the coincidental and legally remote source of a component, the gasoline, which was itself harmless until acted upon by the insured's negligence." Id. at 527.
This case, like Almayor, is distinguishable from cases where there exists a causal connection between the excluded act, such as automobile maintenance, and the injury. See Volkswagen Ins. Co. v. Nguyen, 405 So.2d 190 (Fla. 3d DCA 1981), receded from on other grounds, Dung Ba Nguyen v. Holyoke Mut. Ins. Co., 436 So.2d 931 (Fla. 3d DCA 1983). For example, in Nguyen, we considered a situation where the injured party was burned on the insured premises while trying to start a truck engine by pouring gasoline in the carburetor. In that context, we held that "[t]he attempt to start the truck by pouring gas into the carburetor, which resulted in the ignition of the gas, involved the `maintenance' of the vehicle within the terms of this exclusion." Id. at 195. Nguyen, unlike this case and Almayor, involved a clear causal connection between the injuries and the ignition of the gasoline while attempting to maintain a vehicle. Id. at 196. With all due respect to my dissenting colleague, there is no parallel between the facts in Nguyen and our case, much less a strikingly similar one.
*60 Contrary to the dissent's suggestion, we are not at all concerned about the fairness of relieving any insurer of responsibility. Nor are we, as also suggested by the dissent, seeking to create coverage where none exists. Instead, our task is to interpret the parameters of coverage under the facts of this particular case. If there exists a causal connection between the excluded act and the injury, there is no coverage; conversely, if there is no causal connection between the excluded act and the injury, the exclusion may not be applied to preclude coverage.
After a thorough review of the record, we hold that there is no causal connection between the use or maintenance of an automobile and Avila's injuries. Avila's injuries occurred because the driveway did not function as it was supposed to, that is, to hold the weight of a common car. The insurance company's own expert report makes clear that the crack in the concrete slab would not have occurred if the slab had been properly constructed in accordance with the applicable building code. As such, the car was merely the instrumentality of the injuries and the maintenance of the car was entirely coincidental. The required "level of causation greater than coincidence" is simply not present. See Garcia, 969 So.2d at 293.
Based upon the foregoing, we find that the trial court erred in granting summary judgment in favor of the Insurance Carrier and, therefore, we reverse. Having determined that this particular exclusion from coverage is not applicable in the present case, the Insurance Carrier is, nevertheless free to assert any other coverage defenses it may have available.
Reversed and remanded.
GERSTEN, C.J., concurs.
SHEPHERD, J., dissenting.
This case is truly one of the "chicken and the egg." If the driveway had not been defectively designed or installed, the accident likely would not have happened. If the car under which Sergio Avila had the misfortune to be lying had not been ramped up over a defective spot, the accident would not have happened. Fortunately, we have the common law of contracts to tell us whether Citizens is required to indemnify the almost certainly responsible homeowner, Jose Martinez, for Mr. Avila's injuries. The simple and longstanding answer is, "no."
The relevant insuring clause of the contract is the following:
COVERAGE L  PERSONAL LIABILITY
If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:
1. pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured."
2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.
An "occurrence," as defined in the policy, means "an accident . . . which results during the policy period, in . . . `bodily injury.'" There is indisputably a covered loss under the insuring clause of the insurance contract. This, however, does not end the inquiry.
Even where there is a covered loss in an indemnity agreement, of which an insurance contract is a species, there might exist exclusions from the benefit of the *61 promise made by the indemnitor. Thus, after one determines the indemnity clause of an insurance policy is invoked, the next step is to determine whether there also exists in the contract an exclusion from coverage. See Allison v. Imperial Cas, & Indem. Co., 222 So.2d 254, 256 (Fla. 4th DCA 1969) ("To interpret the policy in question and resolve the ultimate issue, we will first consider the coverage provided by the policy, next the policy definition of the term `insured', and finally the effect of any express exclusions."); see also Aten v. Scottsdale Ins. Co., 511 F.3d 818, 820 (8th Cir.2008) (citing Donald Malecki and Arthur Flitner, CGL Commercial General Liability 5, 10-12, 24-25 (National Underwriter Company 2005)); 1325 N. Van Buren, LLC v. T-3 Group, Ltd., 293 Wis.2d 410, 716 N.W.2d 822, 836 (2006). One of the exclusions in the insurance contract in this case reads as follows:
Coverage L-Personal Liability and Coverage M-Medical Payments to Others do not apply to "bodily injury" or "property damage:"
. . . .
e. arising out of:
(1) the ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an insured[.]
The parties in this case have wrangled over the cause of the accident. The majority similarly tortures itself over that question. See, e.g., supra p. 59 (acknowledging the existence of expert testimony "that the crack in the concrete slab resulting in the accident was caused by the car wheel load," but in the same instant postulating, as if by decree, the automobile to have been "devoid of any causal connection to Avila's injuries"). However, as can be seen from the contract language, it does not matter. Because, Mr. Avila admits, he "[went] under the car in order to change the oil"in other words, to perform maintenance on the automobilethe only serious question is whether Avila's injury "ar[ose] out of" that maintenance.
Answering this question, we begin by noting the Florida Supreme Court expressly stated that the phrase "arising out of" is "unambiguous" in its meaning. Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So.2d 528, 532-33 (Fla.2005). Furthermore, as the majority acknowledges, the words "are of much broader significance th[a]n `caused by.'" See supra p. 59 (citing Ohio Cas. Ins. Co. v. Cont'l Cas. Co., 279 F.Supp.2d 1281, 1284 (S.D.Fla.2003) (citing Nat'l Indem. Co. v. Corbo, 248 So.2d 238, 240 (Fla. 3d DCA 1971))); see also Taurus, 913 So.2d at 533. Instead, consistent with the overwhelming majority of jurisdictions throughout the United States that have considered the questionand further acknowledged by the majorityour high court has opined that, contextually viewed, the meaning of the phrase includes "originating from," "having its origin in," "growing out of," "flowing from," "incident to," or "done in connection with"in this case, the ownership, maintenance, or use of a motor vehicle. Taurus, 913 So.2d at 532-33, 539. It is undeniable that Mr. Avila was in the process of maintaining a motor vehicle when the accident in this case occurred, and that the accident occurred "in connection with" the maintenance of the vehicle.
It is true, as the majority states, that in explicating the extensive reach of the phrase "arising out of," as just described, our high court also has indicated that "`arising out of' . . . require[s] some level of causal connection greater than coincidence[.]" Id. at 533. However, in the same breath, the court made it quite clear that *62 this level of "causal connection" is exceedingly low, stating that "`[A]rising out of' [in the context of automobile coverage] does not mean `proximately caused by,' but has a much broader meaning. All that is required is some nexus between the motor vehicle and the injury." Id. (citing Gov't Employees Ins. Co. v. Novak, 453 So.2d 1116, 1119 (Fla.1984)). Tort principles of legal or proximate cause do not inform the discussion. Prudential Prop. & Cas. Ins. Co. v. Swindal, 622 So.2d 467, 470 (Fla. 1993) ("Florida law has long followed the general rule that tort law principles do not control judicial construction of insurance contracts.").[1] It cannot be denied that there exists a nexus or "connection" between the injury suffered by Mr. Avila and the automobile that fell on him. Under the unambiguous terms of the contract entered into between Citizens and Mr. Martinez, Mr. Martinez has no coverage under his homeowner's insurance policy for this loss.
Reaching a contrary conclusion, the majority places sole reliance on Almayor v. State Farm Fire & Casualty Co., 613 So.2d 526 (Fla. 3d DCA 1993). This reliance is misplaced. As clearly stated by Chief Judge Schwartz in Almayor, the car in that case "had little, if anything, to do with the fire" that burned Mr. Almayor. Id. at 526. Instead, "[i]t was merely the coincidental and legally remote source of a component, the gasoline, which was itself harmless until acted upon" by one of the residents, whosporting a freshly lit cigarette in his handwalked out of the door and down the steps of the house where sat the liquid. Id. As the court declared, the accident "arose" not out of the maintenance of the vehicle, but rather the resident's "allegedly negligent use of flammable material." Id. Unlike in Almayor, the automobile here was not the "coincidental and legally remote" source of Mr. Avila's injuries. Id. It fell directly on him.
In sharp contrast to the facts of Almayor, the facts of our case are strikingly parallel to those found in Volkswagen Insurance Co. v. Nguyen, 405 So.2d 190 (Fla. 3d DCA 1981), receded from on other grounds, Dung Ba Nguyen v. Holyoke Mut. Ins. Co., 436 So.2d 931 (Fla. 3d DCA 1983), cited by Chief Judge Schwartz to illustrate when, as here, premises liability coverage should be found not to exist. Volkswagen, 405 So.2d at 192. In that case, the homeowner asked a workman to meet him on a weekend at his place of business to assist in moving certain items. Id. The truck intended to be utilized for the purpose would not start. The workman was burned when a spark from the disobliging truck ignited gasoline the insured homeowner was pouring into the carburetor. Id. In the coverage action brought by the homeowner against his homeowner's insurance company, we concluded that an automobile exclusion, identical in all material respects to the one in our case, applied to preclude coverage. Id. at 195. We said, "since the pouring of gas in the carburetor was done for the purpose of starting the truck, [the] resulting injuries suffered by [the workman] arose out of the maintenance of the vehicle." Id. at 196. As in our case, the disobliging truck in Volkswagen was not a "coincidental and legally remote" source of the injury to the workman. In today's lexicon, we would say there was a substantial or direct "connection" or "nexus" between the injury suffered *63 by the workman in Volkswagen and the motor vehicle. The same is true in the case before us.[2]
I glean from the arguments advanced by Mr. Martinez, a concernperhaps also troubling to the majoritythat there is something fundamentally unfair about freeing the insurer from responsibility to satisfy the injured party's claim in this case. As the majority notes, "it appears that it was pure chance that the object upon the driveway at the time of its collapse happened to be a car." See supra p. 59. Mr. Martinez also worries that a "no coverage" decision in cases of this type will create a "gap" in coverage between the usual homeowner's insurance policy and the standard automobile insurance policy, a condition disfavored by public policy in this state. See Taurus, 913 So.2d at 538; Farrer v. U.S. Fid. & Guar. Co., 809 So.2d 85, 94 (Fla. 4th DCA 2002). There should be no cause for concern.
First, there is no record evidence in this case that Mr. Martinez carried liability insurance on the automobile that fell on his tenant. If he did, the broad construction given to the standard insuring clause in the ordinary and customary automobile insurance policy issued by insurers in this stateproviding coverage for bodily injury "arising out of the ownership, maintenance or use" of an automobile, see Nat'l Merch. Co. v. United Serv. Auto. Ass'n, 400 So.2d 526, 530 (Fla. 1st DCA 1981)likely would have required his automobile insurer to afford him both a defense and indemnification in this case. Courts have interpreted the insuring clauses of automobile insurance policies to afford coverage under less compelling facts than those here. See id. (finding auto insurer liable for prescription drugs ingested by a child after insured, a pharmaceutical supervisor, left drugs in his car while running an errand); Nat'l *64 Indem. Co., 248 So.2d at 238 (finding auto insurer liable after a dog bit insured's passenger while being transported).
Second, insurers routinely offer umbrella and other types of insurance policies for purchase by property owners and other citizens of this state who are concerned about increased and uncovered risks resulting from gaps in coverage. See Commercial Union Ins. Co. v. Walbrook Ins. Co., 7 F.3d 1047, 1053 (1st Cir.1993) ("[T]his interpretation is consonant with the broader function served by umbrella policiesextending coverage even to unanticipated `gaps.'"); see generally Douglas R. Richmond, Rights and Responsibilities of Excess Insurers, 78 Denv. U.L.Rev. 29 (2000); Michael A. Knoerzer, Introduction to Excess Insurance, 629 Prac. L. Inst. 181 (2000); see also Taurus, 913 So.2d at 538 (noting the same as it pertains to comprehensive general liability insurance). The fact the object that fell on Mr. Avila was an automobile was not serendipitous from an insurance viewpoint. The automobile exclusion in a homeowner's insurance policy is designed to be the mirror and "mutually exclusive" image of the standard insuring clause in an automobile insurance policy. See Farmers' Mut. Ins. Co. of Salem County v. Allstate Ins. Co., 341 N.J.Super. 346, 775 A.2d 514, 517 (2001).
Lastly, Mr. Martinez argues that the principle of interpretation of insurance contracts, requiring courts to strictly construe exclusionary clauses, operates to afford him insurance coverage in this case. However, these and all other interpretive flourishes available for the purpose of construing language found in insurance contracts, are inapplicable where the language or clause in question is unambiguous. Id. at 532; Garcia v. Fed. Ins. Co., 969 So.2d 288, 291 (Fla.2007). In such cases, as here, we apply the plain language of the policy in accordance with its every day meaning as it is "understandable to a lay person," Hrynkiw v. Allstate Floridian Ins. Co., 844 So.2d 739, 742 (Fla. 5th DCA 2003), just as we would with any other contract. Applying the plain and ordinary meaning of the words of the insurance policy to this case, it seems inarguable to me that Mr. Avila was under the car for the purpose of maintaining it when it fell on him.
It is well settled that the courts of this state are not legally authorized to create coverage where none exists. Duncan Auto Realty, Ltd. v. Allstate Ins. Co., 754 So.2d 863, 864-65 (Fla. 3d DCA 2000). Regrettably, the majority does so in this case. I would affirm the decision of the court below.
NOTES
[1] The difference in the types of insurance policies is immaterial to the point made. See Taurus, 913 So.2d at 532 ("[I]f a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision [such as obtains in an automobile insurance policy] or an exclusionary provision[.]") (citing Hagen v. Aetna Cas. & Sur. Co., 675 So.2d 963, 965 (Fla. 5th DCA 1996)).
[2] Courts, both in Florida and around the country, have dealt with "arising out of" language and found coverage to exist or not based on the presence of a "connection" or "nexus"perhaps arising to proximate cause, and perhaps not. See, e.g., Novak, 453 So.2d at 1119 (finding that injuries caused to driver of vehicle shot by pedestrian who was refused ride by driver arose out of the ownership, maintenance or use of a motor vehicle, affording coverage under standard automobile insurance policy); Underwriters at Lloyd's of London v. McCaul, 949 So.2d 1137 (Fla. 3d DCA 2007) (finding automobile exclusion in comprehensive general liability policy precluded coverage to van on side of road where collision was caused by passenger car swerving off highway into van); see also Stevens v. Fireman's Fund Ins. Co., 375 F.3d 464, 467 (6th Cir.2004) (applying Florida law and noting that "[t]he majority of Florida's district courts of appeal . . . have held that general liability policies with auto exclusion clauses provide no coverage for injuries that would not have occurred but for the use of an auto"); Gen. Star Indem. Co. v. Millington, No. CV010183908S, 2006 WL 1680985, at *6 (Conn.Super.2006) (finding automobile exclusion in police professional liability policy precluded coverage where truck officer was chasing, crashed into, and injured innocent victims during course of chase); Thornton v. Allstate Ins. Co., 425 Mich. 643, 391 N.W.2d 320, 322 (1986) (finding automobile exclusion in taxi cab owner's personal injury protection policy precluded coverage to driver for gunshot injuries suffered by driver arising out of robbery by passenger); Schmidt v. Utils. Ins. Co., 353 Mo. 213, 182 S.W.2d 181, 183 (1944) (affording coverage to truck owners under standard automobile insurance policy for injuries suffered by pedestrian who tripped over wooden blocks left behind by truck operators, which had been used to hoist truck onto sidewalk for purpose of dumping coal); Carter v. Bergeron, 102 N.H. 464, 160 A.2d 348, 353 (1960) (concluding that a jury issue existed concerning whether standard automobile policy afforded coverage to owner of truck alleged to have negligently caused employee driving following truck to speed and collide with third party vehicle); Westchester Fire Ins. Co. v. Cont'l Ins. Cos., 126 N.J.Super. 29, 312 A.2d 664, 669 (1973) (noting that "there need be shown only a substantial nexus between the injury and the use of the vehicle in order for the obligation to provide coverage to arise").