[Civ. No. 31528. First Dist., Div. One. Dec. 21, 1973.]

UNITED SERVICES AUTOMOBILE ASSOCIATION,
Plaintiff and Appellant, v.
UNITED STATES FIRE INSURANCE COMPANY et al.,
Defendants and Respondents.

---

---

**COUNSEL**

Hoge, Fenton, Jones & Appel and Henry T. Morrow for Plaintiff and Appellant.

Bronson, Bronson & McKinnon and Paul H. Cyril for Defendants and Respondents.

---

**OPINION**

**MOLINARI, P. J.**—This is an appeal by United Services Automobile Association (hereinafter the "Association") from a judgment in a declaratory relief action brought by it against United States Fire Insurance Company (hereinafter the "Company"), John Chandler, Stephen Boyle and Henry M. Boyle. The Association sought to have determined the respective rights and duties of the parties as to certain insurance coverage. The trial court determined that the policy of insurance issued by the Association covered any liability that Chandler had to the Boyles with respect to an accident occurring on April 12, 1969; that the Company's policy did not cover any such liability, and that the Association had the sole responsibility to defend and indemnify Chandler with respect to said accident.

The insurance policy issued by the Association was an automobile insurance policy covering Carolyn L. Chandler as the named insured; that issued by the Company was a homeowner's insurance policy in which Carolyn L. Chandler was the named insured. It was stipulated at the trial that John Chandler, the son of the named insured, was covered by both of these policies.

On April 12, 1969, an accident occurred at the Boyle residence. A number of Stephen Boyle's friends had gathered to work on a Pontiac automobile owned by Boyle. John Chandler attempted to start the car while pouring gasoline into the carburetor and the gasoline from the can. ignited. Apparently the carburetor had backfired causing the gasoline to ignite. Chandler backed away from the car with the burning gasoline can in his hands, started to set it down and then threw it towards the open garage door. This movement took from four to five seconds. The burning gasoline can struck Stephen Boyle as he was running out of the garage. For the injuries allegedly sustained Stephen Boyle filed an action against John Chandler.

Under the pertinent portions of its policy the Association agreed "To pay on behalf of the insured all sums which the insured shall be legally obligated to pay as damages because of: A. bodily injury, . . . sustained by any person; B. . . . arising out of the ownership, maintenance or use of . . . any non-owned automobile, . . ." With respect to a nonowned automobile the policy included in the definition of "persons insured" the following: ". . . (2) any relative, but only with respect to a private passenger automobile . . . provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, . . ." This policy also contained a clause with respect to "Other Insurance" which read, in pertinent part, as follows: ". . . provided, however, the insurance with respect to a . . . non-owned automobile shall be excess insurance over any other valid and collectible insurance."

The Company's policy, in pertinent part, provided that it would pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury but specifically provided that this coverage did not apply ". . . to the ownership, maintenance, operation, use, loading or unloading of . . . automobiles . . . while away from the premises . . . ." This policy also provided that ". . . (c) If the insured has other insurance against a loss covered by this policy, this Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the Declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss, provided that with respect to loss arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobile . . . at the premises . . . this insurance shall not apply to the extent that any valid and collectible insurance, whether on a primary, excess or contingent basis, is available to the Insured."

At the trial it was stipulated that the Boyle automobile was a nonowned automobile and that John Chandler was a "relative" of the named insured as defined in the Association's policy. It was also stipulated that the accident occurred "away from the premises" as defined in the Company's policy.

The Association contends that its policy does not apply to the subject accident and, alternately, that its coverage is secondary to the coverage provided by the Company. It should be noted here that on conflicting evidence the court found that John Chandler's activities relative to the Boyle automobile were reasonably believed by him to have been done with the permission of the owner. This finding is not contested.

The Association's policy is basically an automobile liability policy. As to the coverage provided for nonowned automobiles, the named assured is covered as well as any relative "provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner . . . ." Accordingly, the essential issue in this case is whether John Chandler's activity on April 12, 1969, constituted "other actual use" of the Boyle automobile. ■ In focusing upon this issue we first observe that in determining whether a peripheral activity involving a vehicle amounts to a "use" we are governed by the rule that "uncertainties in policy language are construed in favor of imposing liability on the insurer; hence that 'use' must be understood in its most comprehensive sense. The term is not confined to motion on the highway, but extends to any activity in utilizing the insured vehicle in the manner intended or contemplated by the insured." (*Pacific Indem. Co.* v. *Truck Ins. Exch.*, 270 Cal.App.2d 700, 703 [76 Cal.Rptr. 281]; *Hartford Accident & Indem. Co.* v. *Civil Service Employees Ins. Co.*, 33 Cal.App.3d 26, 31 [108 Cal.Rptr. 737]; see *Cocking* v. *State Farm Mut. Automobile Ins. Co.*, 6 Cal.App.3d 965, 969-970 [86 Cal.Rptr. 193].)

In *Cocking,* where we held that the plaintiff, who was engaged in placing chains on a car and was hit by an uninsured motorist, was "using" the car, we noted that the policy of this state is to provide compensation for those injured by the use of automobiles and that contractual provisions in the policies must be construed in the light of this public policy. (6 Cal.App.3d at p. 969; see *Barrera* v. *State Farm Mut. Automobile Ins. Co.*, 71 Cal.2d 659, 670-672 [79 Cal.Rptr. 106, 456 P.2d 674]; *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.*, 58 Cal.2d 142, 154 [23 Cal.Rptr. 592, 373 P.2d 640].)

■ In determining whether a person was in such a position in relation to the vehicle as to be injured in its use, consideration must be given, not only to what the person was doing when injured, but also to his purpose and intent. (*Cocking* v. *State Farm Mut. Automobile Ins. Co., supra,* 6 Cal. App.3d 965, 970.)

The Association contends that its policy clearly intends to limit the situation involving a relative and a nonowned vehicle. In support of this contention it is pointed out that coverage for the named insured includes "ownership, maintenance or use of any nonowned vehicle" while the coverage for the relative includes only actual operation or "other actual use." It is asserted that the elimination of the word "maintenance" and the inclusion of the word "actual" is indicative of a more limited coverage for a relative.

We perceive that the distinction urged by the Association lies in the differences between the meaning of "use" and "actual use." That distinction, if it exists, appears to lie in the difference between conduct that is passive and conduct that is active. Accordingly, we apprehend that the insured may be covered for conduct that is passive as well as active, while that of the relative is restricted to active conduct. Our concern here is not with any distinction that may be posed by the language of the policy but simply whether John Chandler was using the Boyle automobile at the time of the accident and whether such use was an "actual use."

As already pointed out, the word "use" can be construed to extend to any utilization of the insured vehicle in a manner intended or contemplated by the insured. The term "actual use" must be construed to mean "present or active use" or a "use existing in fact or reality" (see definition of "actual," Webster's New Internat. Dict. (3d ed. 1966)) as distinguished from an imputed or constructive use. (See *Cahill Bros., Inc.* v. *Clementina Co.,* 208 Cal.App.2d 367, 379-382 [25 Cal.Rptr. 301].) Thus, a person is "using" a motor vehicle if he lets a friend drive it. (*Osborne* v. *Security Ins. Co.,* 155 Cal.App.2d 201, 208 [318 P.2d 94].)

■ Adverting to the instant case in the light of the rule that uncertainties in the policy language are construed in favor of imposing liability on the insurer, we observe that John Chandler was clearly "using" the Boyle vehicle in the sense that he had recourse to the vehicle. That use was "actual" because it was an active and present use. Chandler's actions in attempting to start the car constituted a physical relationship to it and was a present use performed for the purpose of making the vehicle operative. The resulting accident was proximately caused by that use. Insofar as the insured Carolyn Chandler is concerned, such use can be said to have been intended and contemplated by her. The Company's policy clearly insured her son for liability while actually operating or using a nonowned passenger vehicle. Such operation or use would of necessity include activity seeking to make that vehicle operative. The placing of gasoline in a carburetor is a common method of starting a vehicle that has run out of gasoline. That a contingency might occur requiring this method of making an automobile operative would have been in the contemplation of the parties to the insurance contract. (See *Hartford Accident & Indem. Co.* v. *Civil Service Employees Ins. Co., supra,* 33 Cal.App.3d 26, 32.)

The cases which have strictly construed the meaning of "use" are those where the vehicle was only a peripheral factor in nontraffic situations and the injury was directly caused by an independent act or intervening cause wholly disassociated from, independent of and remote from the use of the

automobile, or cases where the insurance company of the negligent party sought to recover from the insurance company of the innocent party, and it was deemed inequitable to permit such recovery, or cases partaking of both of these situations. (*Yandle* v. *Hardware Mut. Ins. Co.*, 314 F.2d 435, 437; *International Business Machines Corp.* v. *Truck Ins. Exch.*, 2 Cal.3d 1026, 1029-1031 [89 Cal.Rptr. 615, 474 P.2d 431]; *Travelers Ins. Co.* v. *Northwestern Mut. Ins. Co.*, 27 Cal.App.3d 959, 962-966 [104 Cal.Rptr. 283]; *State Farm Mut. Auto. Ins. Co.* v. *Cummings*, 21 Cal.App.3d 441, 444-445 [98 Cal.Rptr. 320]; *Camay Drilling Co.* v. *Travelers Indem. Co.*, 12 Cal.App.3d 237, 240-241 [90 Cal.Rptr. 710]; *American Home Assur. Co.* v. *State Farm Mut. Auto. Ins. Co.*, 1 Cal.App.3d 355, 358 [81 Cal. Rptr. 732].)

In the instant case while the activity involving the vehicle was peripheral it was not an activity wholly disassociated from, independent of and remote from its use. It was, as pointed out above, an activity utilizing the nonowned vehicle in the manner intended or contemplated by the insured. Accordingly, there is a close sequential relationship between the vehicle and the accident. Moreover, the instant case is not a situation where the insurance company of the negligent party is seeking to recover from the insurance company of the innocent party, but a situation where each of two companies insuring the negligent party is seeking to fasten liability on the other.

Adverting to the Company's policy, we first observe that it was essentially a homeowner's protection policy. That policy specifically provides that the coverage is excluded as to "the ownership, maintenance, operation, use, loading or unloading of (1) automobiles . . . while away from the premises or the ways immediately adjoining." In *Herzog* v. *National American Ins. Co.*, 2 Cal.3d 192 [84 Cal.Rptr. 705, 465 P.2d 841], this exact language was held to exclude coverage for automobile-related accidents occurring beyond the limited area of the homeowner's premises. (At pp. 196-199; see also *Huggins* v. *Yoshiwara*, 2 Cal.3d 200, 203 [84 Cal.Rptr. 709, 465 P.2d 845].) In *Herzog*, the accident took place on a freeway several miles from the premises of the insured; in *Huggins*, the accident occurred at an intersection in a city other than the one in which the insured resided. In the present case the accident occurred at the Boyle residence at 83 Knight Drive, San Rafael. The homeowner's policy was issued to Carolyn Chandler for the premises known as 82 Rollingwood, San Rafael. Pursuant to stipulation and under the rationale of *Herzog* and *Huggins*, the accident occurred away from the insured premises and not on said premises or "the ways immediately adjoining" those premises.

The case of *State Farm Mut. Auto. Ins. Co.* v. *Partridge,* 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 .P.2d 123], is distinguishable. In that case the insurer had issued an automobile liability policy and a homeowner's policy to the same insured. The homeowner's policy contained an exclusion of liability for injuries arising out of the use of any motor vehicle excepting a nonregistered vehicle kept exclusively on the "residence premises." A woman passenger in the insured's automobile was injured when a pistol being used by the insured to hunt rabbits from the automobile discharged when the insured turned off a paved road onto rough terrain. The insured had modified the pistol so as to give it a "hair-trigger action." The Supreme Court held that the policies were mutually exclusive and that both afforded coverage upon the rationale that the "use" of the car was not the sole cause of the injuries but was only one of two joint causes of the accident, and that the other concurrent cause, the insured's modification of the pistol, was a risk covered by the homeowner's policy, the liability for which existed independent of the use of the automobile. (At pp. 102-105.) *Herzog* was distinguished on the basis that it dealt with an automobile accident arising *solely* out of the use of the vehicle, while the case under review involved a nonautomobile risk and an automobile risk constituting proximate causes of the accident, thus providing overlapping coverage. (At p. 106.)

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

A petition for a rehearing was denied on January 18, 1974, and the following opinion was then rendered:

**THE COURT.**—Appellant, United Services Automobile Association (referred to in this court's opinion as the "Association") asserts in its petition for a rehearing that this court in its opinion did not determine the existence of possible duplicate coverage by both respondent United States Fire Insurance Company (referred to in the opinion as "the Company") and the Association. Although termed a "crucial issue" in the petition for rehearing, this issue was not in the briefs before us nor, upon a consideration of the findings of fact and conclusions of law, was it raised in the court below.

The issues presented on appeal by the Association were whether the "automobile exclusion" provision of the Company's policy eliminated coverage for John Chandler for the accident herein; whether John Chandler was an additional insured under the Association's policy with regard to

this accident, and whether the "excess clause" of the Association's policy with regard to nonowned automobiles should be given effect and the Company's policy held to be primary if both policies apply. We were not called upon to determine whether there was concurrent coverage on the basis of the liability we have found to exist on the part of the Association and any liability that might exist under the personal liability provisions of the Company's policy aside from that pertaining to the ownership, maintenance, operation, use, loading or unloading of automobiles while away from the premises. Accordingly, our opinion is intended to apply to the issues therein discussed and it is not intended to mean, as urged by the Association in its petition for rehearing, that no homeowner's coverage will ever exist for any off-premises accident where the use of an automobile is peripherally involved.

■ A rehearing will not be granted to consider points not presented in briefs or arguments on which the case was submitted for decision. (*Pasadena Ice Co.* v. *Reeder,* 206 Cal. 697, 705 [275 P. 944, 276 P. 995]; *City of San Marino* v. *Roman Catholic Archbishop,* 180 Cal.App.2d 657, 679 [4 Cal.Rptr. 547] [cert. den., 364 U.S. 909 (5 L.Ed.2d 224, 81 S.Ct. 272)]; *Stapp* v. *Marshburn,* 165 Cal.App.2d 808, 815 [332 P.2d 798, 333 P.2d 351]; *Smith* v. *Crocker First Nat. Bank,* 152 Cal.App.2d 832, 837 [314 P.2d 237].

Appellant's petition for a hearing by the Supreme Court was denied February 27, 1974.