[Civ. No. 63707. Second Dist., Div. Two. May 20, 1982.]

STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff and Respondent, v.
NANCY CAROL KOHL et al., Defendants and Appellants.

**COUNSEL**

Cohen, England, Whitfield & Osborne, Thomas B. Osborne, Robert A. McSorley, Henderson & Smith and David L. Allen for Defendants and Appellants.

Lawler & Ellis, Margot Davis and Korman Dorsey Ellis for Plaintiff and Respondent.

**OPINION**

**COMPTON, J.**—In this case we deal with yet another dispute concerning the coverage provided by the liability provisions of a "Homeowners" insurance policy. The trial court, in a declaratory relief action initiated by State Farm Fire and Casualty Company, determined that under the circumstances the policy did not provide coverage. We reverse.

The issue of coverage has its origin in a personal injury action filed by Nancy Kohl and her husband Dennis Kohl (Ventura County Super. Ct. No. 66719) against one John Mahnken. Defendant, John Mahnken, was insured under two policies, i.e., the homeowner's policy referred to above, and an automobile liability policy issued by State Farm Auto Insurance Company.[1]

The homeowner's policy has a limit of $100,000, while the auto policy has a limit of $25,000. The two policies complement each other in that the auto policy covers Mr. Mahnken for liability *arising out of the ownership and use of the automobile*, while the homeowner's policy

---

[1] Although the two insurance policies were issued by different corporate entities, they are signed by the same individual as president and we consider that they were both issued by the same insurer and hereafter refer to the insurer as State Farm.

provides him with general liability coverage *excluding that arising out of* the *ownership and use of an automobile.*

In its complaint for declaratory relief, State Farm alleged that John Mahnken, its insured, had made demand on it to defend and idemnify him under the homeowner's policy against any liability he may suffer as a result of the personal injury action. Mahnken and the Kohls were joined as defendants in the declaratory relief action.

At this juncture, the underlying personal injury action has not been tried. The resolution of the coverage dispute thus must be accomplished by accepting as true the allegations contained in the complaint filed by the Kohls in their action against Mahnken.

These allegations may be summarized as follows. Nancy Kohl was riding a motorcycle in an easterly direction along Ventura Boulevard when John Mahnken, who was driving a pickup truck in a westerly direction, made a left turn in front of her. She collided with the truck and was thrown to the pavement suffering serious injuries.

After the accident, Mahnken alighted from his truck and, with the aid of a bystander,[2] proceeded to drag Nancy and the motorcycle from the position where she was lying in the street. According to the complaint this "dragging" was done in such a negligent fashion that it caused additional serious injury to Nancy.

At the outset, we dispose of the issue of policy terminology. The auto policy in its coverage clause uses the term "accident"[3] while the homeowner's policy uses the term "occurrence."[4] Inherent in both policies, of course, is the provision that the policy limits apply to each accident or occurrence.

In our view, for the purposes of this case, the terms "accident" and "occurrence" are synonymous and what semantical difference may exist

---

[2] The bystander was also joined as a defendant in the personal injury action.

[3] "To pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of (A) Bodily injury sustained by other persons, and (B) Property damage, *caused by accident* arising out of the ownership, maintenance or use, including loading, unloading, of the *owned motor vehicle*; ..." (Italics added.)

[4] "This company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, *caused by an occurrence....*" (Italics added.)

is not of sufficient substance to provide a basis for resolving the issue favorably to State Farm.

■ In determining whether, under a particular set of circumstances, there was one accident or occurrence, the so-called "causation" theory is applied. Hence a single *uninterrupted course of conduct* which gives rise to a number of injuries or incidents of property damage is one "accident" or "occurrence." On the other hand, if the original cause is interrupted or replaced by another cause, then there is more than one "accident" or "occurrence." (*Liberty Mut. Ins. Co.* v. *Rawls* (5th Cir. 1968) 404 F.2d 880; *Saint Paul-Mercury Indemnity Co.* v. *Rutland* (5th Cir. 1955) 225 F.2d 689; *Olsen* v. *Moore* (1972) 56 Wis.2d 340 [202 N.W.2d 236].)

Our recent opinion in *Spargur* v. *Park* (1982) 128 Cal.App.3d 469 [180 Cal.Rptr. 257], presented a problem somewhat analogous to the one now before us. In that case a police officer stopped a motorist for speeding. After the officer had directed the driver to stop at a particular spot he parked his motorcycle in front of the car and dismounted. The driver failed to stop and continued on striking the officer and injuring him. We held that the conduct of the driver in striking the officer could amount to an independent and separate tort which would be the basis for liability, notwithstanding the "fireman's rule" which would bar liability based upon the antecedent speeding violation which brought the officer to the point where he was exposed to the injury.

Thus under the circumstances of the case at bench, it seems clear to us that there were, to use the terms of the policy, both an "accident" within the purview of the auto policy and an "occurrence" within the purview of the homeowner's policy.

On the other hand, however, it is clear that under general tort principles, the additional injury suffered by Nancy as a result of the conduct of Mahnken and Bewley in negligently "dragging" her would be covered by the automobile policy, since that subsequent negligence would be a foreseeable consequence of the original accident. From that viewpoint it would follow that the subsequent additional injuries arose out of the "use" and "operation" of the motor vehicle (see *United Services Automobile Assn.* v. *United States Fire Ins. Co.* (1973) 36 Cal.App.3d 765 [111 Cal.Rptr. 595]) thus invoking the *coverage* clause of the auto policy.

At first blush that would appear to end the inquiry. ■ Recent case law, however, has established that coverage by an automobile liability policy does not ipso facto invoke the similarly worded exclusion clause of a homeowner's policy. "... the fact that an accident has been found to 'arise out of the use' of a vehicle for purposes of an automobile policy is not necessarily determinative of the question of whether that same accident falls within a similarly worded exclusionary clause of a homeowner's policy." (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, at p. 102 [109 Cal.Rptr. 811, 514 P.2d 123].)

Thus the question narrows as to one of whether the postaccident conduct of Mahnken was so intimately involved with the use of the vehicle and the part of a course of uninterrupted conduct as to require the finding that it "arose" out of such use for the purposes of the exclusionary clause or, on the other hand, was independent nonvehicular conduct which replaced or concurred with the vehicle use as a cause of the additional injury.

State Farm of course points to the exclusionary clause in its homeowner's policy and contends that any injury which Nancy suffered necessarily arose out of Mahnken's operation and use of a motor vehicle. Nancy and Dennis, on the other hand, contend that the conduct of Mahnken in dragging her several feet in her injured condition, was an independent act of negligence unrelated to the use of the vehicle and that liability therefor should be considered as if Mahnken had been a bystander uninvolved in the original collision.

It is worth noting that under State Farm's theory, if at trial Mahnken were found not to be negligent in the initial collision, then neither policy would cover the additional injuries which we must, at this point, assume Nancy suffered.

In *United Services Automobile Assn.* v. *United States Fire Ins. Co.,* *supra,* 36 Cal.App.3d 765, an insured with both automobile and homeowner's coverage, attempted to start an automobile by pouring gasoline from a can into the carburetor. A fire erupted igniting the gasoline can, The insured threw the gasoline can which struck and burned a nearby individual. It was there held that the injury arose out of the "use" of the vehicle in the attempt to start it and that the homeowner's policy did not provide coverage.

The court in *United Services Automobile Assn.* stated at page 771, "In the instant case while the activity involving the vehicle was peripheral it was not an activity wholly disassociated from, independent of and remote from its use. It was ... an activity utilizing the ... vehicle in the manner intended or contemplated by the insured. Accordingly, there is a close sequential relationship between the vehicle and the accident."

*State Farm Fire & Cas. Co. v. Camara* (1976) 63 Cal.App.3d 48 [133 Cal.Rptr. 600], involved an individual, with a homeowner's policy containing the identical exclusion which is present here, who converted a Volkswagen into a "dune buggy." A passenger injured in an accident in the dune buggy sued the insured for negligent design and construction. The Court of Appeal for the Third District gave effect to the exclusion clause holding that the homeowner's coverage applied only to negligence which existed independently of the ownership, use or maintenance of the vehicle.

In *National Indemnity Co. v. Farmers Home Mutual Ins. Co.* (1979) 95 Cal.App.3d 102 [157 Cal.Rptr. 98], this court gave effect to the exclusionary clause where the driver of a vehicle was sued for wrongful death of a child who had been a passenger in the car. The child after exiting the parked vehicle ran into the street where he was struck by another vehicle. We rejected the claim that the negligent failure to supervise the child was non-vehicular conduct. Our reasoning was that the injury occurred during the unloading of the vehicle.

While the foregoing decisions determine that under the particular facts the alleged tortious conduct was vehicle related, they do not rule out the possibility that an act of negligence, independent of the use of the vehicle which would invoke coverage of the homeowner's policy could be found to exist even though at one point in the chain of events a vehicle was involved.

For example, in *Aetna Casualty & Surety Co. v. Safeco Ins. Co.* (1980) 103 Cal.App.3d 694 [163 Cal.Rptr. 219], the accidental discharge of a firearm inside an automobile parked at the site of a hunting trip was held to be an accident not involving the "use" of the automobile. The court stated at pages 700-701: "The vehicle in this case was not moving at the time the gun discharged. No one contends that any action on the part of the driver, *related to the automobile*, caused the gun to go off. 'The circumstance that the placing of the loaded gun in a

hazardous position in the vehicle increased the danger of its firing and harming an occupant does not militate against the conclusion reached by us.' [Citation.] [¶] We conclude, as did the Colorado court in *Azar v. Employers Casualty Company* (1978) 178 Colo. 58 [495 P.2d. 554, at page 555]: 'In our view, it cannot reasonably be said that the discharge of the weapon in this case originated from, grew out of or flowed from the use of the vehicle. Rather, the injury originated from, grew out of or flowed from the use of the firearm.'"

Next, in *Truck Ins. Exch. v. Webb* (1967) 256 Cal.App.2d 140 [63 Cal.Rptr. 791], it was held that an auto liability policy did not cover damage to property caused by a fire where the flammable material had been transported by a truck, unloaded therefrom and ignited.

"In the present case although the use of the pick-up truck did play a part in the chain of events, it cannot be reasonably said that the destruction of the buildings arose out of the 'use' of the vehicle. The conduct of Smith in igniting the boxes and leaving the fire unattended was independent of and unrelated to the use of the truck. The use of the truck was neither a 'predominating cause' or a 'substantial factor' in causing the injury." (*Id.*, at p. 148.)

The underlying rationale of the foregoing cases appears to be that the particular injury which was suffered was of a type which could have occurred without the involvement of a vehicle and the vehicle in no way contributed to the injury. In *Aetna, supra*, at page 700, the court rejected the argument that but for the use of a vehicle, the parties would not have been at the scene of the accident by stating: "Carried to its logical conclusion, it would attach automobile insurance coverage to every accident which occurred after an insured had first been transported by automobile."

The leading case on the subject is *State Farm Mut. Auto. Ins. Co. v. Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123]. There the insured wounded a passenger in his vehicle when a gun which he was holding accidentally discharged as the vehicle struck a bump. The court held that the insured's prior conduct in modifying the gun's trigger mechanism was independent of the use of the vehicle and both the homeowner's policy and the auto liability policy provided coverage.

The distinction between *Partridge* and *Aetna, supra*, and the cases arrayed therein is that the vehicle in *Partridge* provided more than just

a situs for the accident. The movement of the vehicle and its manner of operation was a contributing cause. The distinction between *Partridge* and the case at bench is that the operation of the vehicle in *Partridge* impacted on the existing and continuing *antecedent nonvehicular* negligence of the insured where here the nonvehicular conduct of Mahnken impacted on his antecedent vehicular negligence.

In our opinion the *Partridge* case is indistinguishable in principle from the present case. In *Partridge*, the insured's use of the vehicle, as here, placed the victim in the position to be injured. The injury there, as here, resulted directly from an independent negligent act. Mahnken's act of dragging Nancy from the road was independent of and unrelated to his use of the vehicle even though his use of the vehicle placed the victim in a position which led to the additional injury.

The following language from *Partridge*, at page 102, is controlling of the issue here and its effect is not altered by the sequential order of the two types of conduct. ". . . even if we assume that the connection of the car with the accident is the type of non-ambiguous causal relationship which would normally bring the exclusionary clause into play, the crucial question presented is whether a liability insurance policy provides coverage for an accident caused jointly by an insured risk . . . and by an excluded risk . . . . Defendants correctly contend that when two such risks constitute concurrent proximate causes of an accident, the insurer is liable so long as one of the causes is covered by the policy."

The judgment is reversed and the matter is remanded to the trial court with directions to enter judgment in accordance with the principles which we have stated.

Roth, P. J., concurred.

**BEACH, J.**—I dissent.

There is no quarrel with one principle common to *State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94 [109 Cal.Rptr. 811, 514 P.2d 123], *Spargur* v. *Park* (1982) 128 Cal.App.3d 469 [180 Cal.Rptr. 257] and the case at bench. That principle is simply that there can be two separate and independent acts which may concur to cause an accident or occurrence from which injury results. *Partridge* and *Spargur* simply recognize that where one concurring act is clearly independent, or can be shown to be independent, of the second concur-

ring act, liability can be predicated upon one act as an independent tort (*Spargur*) or upon both acts as joint torts (*Partridge*). I respectfully suggest that the majority opinion unduly focuses on this aspect. But that is not the issue to be resolved here.

The issue at bench is not whether two acts are separable; but whether, even if separable for one purpose or under one legal principle, idea or theory, they may yet be considered to be caused by or arise out of or be born of a larger or inclusive condition, act, circumstance or state of facts, which can be described in such a way as to be understood by reasonable, common sense, fair-minded persons.

At bench, under the definition of the exclusions in the homeowner's policy, it is clear that Mahnken's act of dragging the injured plaintiff was not "independent of and unrelated to his use of the vehicle" whether that act is examined by the use of technical, legal definitions or ordinary English language understood by common sense lay persons.

The homeowner's insurance policy in this case contains the following provision:

"THIS POLICY DOES NOT APPLY:

"1. Under Coverage E—Personal Liability and Coverage

"F.—Medical Payments to Others:

"(a) TO BODILY INJURY OR PROPERTY DAMAGE ARISING OUT OF THE OWNERSHIP, MAINTENANCE, OPERATION, USE, LOADING OR UNLOADING OF: . . .

"(b) ANY MOTOR VEHICLE OWNED OR OPERATED BY, OR RENTED OR LOANED TO ANY INSURED; . . ."

The language does not say that the policy excludes only that part of injuries attributable solely to or during the operation of the vehicle. Instead, the language is intentionally broader. It describes (for purposes of exclusion) injury which *arises* out of the use of the motor vehicle. It is established beyond dispute that this designates injury caused not only while the vehicle is moving or being operated, but even that which may result after the vehicle is at rest. (*United Services Automobile Assn.* v. *United States Fire Ins. Co.* (1973) 36 Cal.App.3d 765 [111 Cal.Rptr.

595]; *National Indemnity Co. v. Farmers Home Mutual Ins. Co.* (1979) 95 Cal.App.3d 102 [157 Cal.Rptr. 98].)

At bench, the dragging and physical injury alleged therefrom arose out of the operation of a vehicle. The vehicular accident placed plaintiff on the ground, a condition crying for rescue. Peril begets rescue. The concern in this case is not whether rescue is or may be in legal theory a separate and independent act for other legal discussions of causation, but whether it is so related to the vehicular accident as to be recognizable as arising out of the accident. In my view rescue requires someone in peril, a "victim." Here, the rescue resulted from the operation of the vehicle. The rescue may be separable from driving the vehicle but the results of both are included in the greater circle of circumstance or condition which is defined as arising from operation of a vehicle.

By contrast, the separate and independent act giving rise to liability in *Partridge* was a "nonauto related act," i.e., the filing of the trigger on the gun. That act had nothing to do with the operation of a vehicle. The significance of that feature was emphasized by the *Partridge* court by its repeated use throughout the opinion of the expression "a nonauto related act." The act of filing the trigger mechanism created an extreme risk of harm totally independent of and certainly not arising from the operation of a vehicle. As such it was unmistakably outside of the circle or ambit of conduct defined in the vehicular operation exclusion of the gun owner's homeowner's policy. As a result, the homeowner's policy was held to provide coverage for the injury which occurred when the gun discharged.

The basis and reasons for declaring the injury covered by the homeowner's policy in *Partridge* are not present here. No gun or second instrumentality proximately caused the injury other than the vehicle itself. The conduct of Mahnken, the driver, in attempting to extract the plaintiff from the scene of the vehicle collision was an act separate only in the fact that it followed the original collision. But his conduct cannot be dissociated from the use of a vehicle. Conduct which is dependent upon and related to the use of the vehicle cannot be deemed an independent act of a homeowner under the homeowner's coverage at bench. (*National Indemnity Co. v. Farmers Home Mutual Ins. Co., supra*, 95 Cal.App.3d 102; *State Farm Fire & Cas. Co. v. Camara* (1976) 63 Cal.App.3d 48 [133 Cal.Rptr. 600].)

What this court said in *National Indemnity, supra*, in arriving at a result different from that which the majority now reaches, applies here. There, this court said: "There is a complete absence of conduct on the part of the insured which is independent of and unrelated to the 'use' of the vehicle. The conduct of the insured which contributed to the injury simply cannot be dissociated from the use of the vehicle. Nor did the injury, insofar as the insured is concerned, involve an instrumentality other than the vehicle itself." (*National Indemnity* v. *Farmers Home Mutual, supra*, 95 Cal.App.3d 102, 109.)

I would affirm.

A petition for a rehearing was denied June 9, 1982. Beach J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied July 22, 1982. Richardson, J., was of the opinion that the petition should be granted.