**John WAGENMAN, Plaintiff,**

v.

**STATE FARM INSURANCE, Defendant.**

**Civ. No. 87–C–1075W.**

United States District Court,
D. Utah, C.D.

Dec. 18, 1989.

D. David Lambert, Provo, Utah, for plaintiff.

Paul M. Belnap, Salt Lake City, Utah, for defendant.

MEMORANDUM DECISION
AND ORDER

WINDER, District Judge.

This matter is before the court on defendant's motion for summary judgment and plaintiff's cross-motion for summary judgment. A hearing was held on these motions on July 11, 1989. Defendant, State Farm Insurance ("State Farm"), was represented by Paul M. Belnap. Plaintiff, John Wagenman, was represented by D. David Lambert. Prior to the hearing, the court had reviewed carefully the memoranda submitted by the parties. After taking the matter under advisement, the court has further considered the law and the facts and now renders the following memorandum decision and order.

BACKGROUND

On December 26, 1986, the plaintiff visited his stepfather and mother, Mr. and Mrs. Milgate at their home in Bloomington, Utah. Mr. Milgate requested plaintiff's assistance in replacing the rear-wheel shocks on his Dodge pick-up truck. Plaintiff alleges that as he pulled on the left rear shock, it suddenly came loose and he fell back onto the cement driveway. Plaintiff alleges he was injured and claims benefits from Mr. Milgate's State Farm no-fault insurance policy form 9844.1 ("Policy") which covers the pick-up truck. The parties dispute whether plaintiff is covered under the

Policy. Both now move for summary judgment on this issue.

## DISCUSSION

### I. *Standard of Review:*

The standard for this court to rule on summary judgment motions is set forth in Federal Rule of Civil Procedure 56(c). Summary judgment shall be granted when parties to a lawsuit do not dispute any material facts and judgment in favor of the moving party is appropriate as a matter of law. A moving party may demonstrate no material facts are disputed through "pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, demonstrates ... there is [no] evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has carried this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553.[1] The non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552.

To be considered the evidence must be admissible under the evidentiary standard that would be applied at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). In considering a summary judgment motion, however, this court does not weigh the evidence but instead inquires whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. at 2510.[2] To determine if sufficient evidence exists, "the inferences to be drawn from the underlying facts [in the admissible record] ... must be viewed in the light most favorable to the [nonmoving] party." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (*quoting United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)). Finally, any admissible facts asserted by the party opposing the motion that are not controverted must be regarded as true.

### II. *Contract:*

The Policy is divided into unnumbered parts and numbered sections. The unnumbered parts; "defined words," "when and where coverage applies," "financed vehicles," "reporting a claim ...," "conditions," and "mutual conditions," apply to the entire policy. The rest of the Policy comprises numbered sections which outline coverage options that the insured may elect. Sections I, II, and III provide options for liability coverage for bodily injury and property damage or destruction including any related court costs.[3] Section IV provides six options for accidental loss of, or physical damage to, the insured vehicle, certain equipment, clothes and luggage, and stored detachable living quarters. These include comprehensive, collision, emergency road service, and expenses incurred as a result of car repair. Finally, Section V covers death, dismemberment, and loss of sight. Each option is denoted by an alphabetic letter. Each policy declaration section lists the insured's choice of coverage options.

Definitions which apply to all coverage selections are listed at the beginning of the contract. Within each section are more

---

1. The summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Id.*

2. "The mere *existence of a scintilla of evidence* in support of the plaintiff's position" is insufficient. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2011.

3. Section I, coverage A, is liability insurance for damage to other persons or property. Section II, coverage P, is no-fault insurance. Section III, coverage U, is uninsured motor vehicle insurance.

specific definitions for terms used in that section. Similar terms are defined differently in the various sections. Likewise, each of the three sections covering insurance for bodily injury specifies in bold type the circumstances for which there shall be no coverage for bodily injury under that coverage type. The sections dealing with physical damage also contain bold-type coverage exceptions.

*The Policy is not Ambiguous.*

■ Plaintiff argues that the contract is ambiguous and thus under well-recognized insurance law principles, also adopted in Utah, it should be interpreted in favor of the insured. He asserts:

> [T]he concepts of "maintaining" a car and "occupying" a car are distinct and fundamentally different, despite theoretical overlap, and ... the policy in question provides no-fault coverage for both situations. At best the policy is ambiguous and provides coverage for maintenance related injuries; at the very least, the policy language which provides for no-fault coverage for maintenance related activity is in conflict with the "occupying" policy language and creates an ambiguity which must be resolved in favor of coverage.

Plaintiff's Memorandum in Support at 2. As the court will illustrate, however, court-developed occupancy tests incorporate appropriate standards for the maintenance situation. Moreover, rather than providing coverage for either a finding of maintenance or a finding of occupancy, case law requires both. The dual requirement ensures that, first, the maintenance or use requirement establishes a causal connection between the insured vehicle and the alleged injury and, second, the occupancy requirement establishes the necessary proximity to the insured vehicle such that a claimant should be afforded coverage.

The Policy also is not ambiguous with respect to the exclusions for persons working in a car business that appear in some sections but not in others. This exclusion first appears in Section I—Liability insurance and excludes bodily injury coverage when *NON–OWNED CARS* are "BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* WHILE THAT *PERSON* IS WORKING IN ANY *CAR BUSINESS*." Later in this section coverage is also excluded for the insured vehicle while "BEING REPAIRED, SERVICED OR USED BY ANY *PERSON* EMPLOYED OR ENGAGED IN ANY WAY IN A *CAR BUSINESS*." A similar exclusion applies to all the physical damage options as well as to the situation when other coverage is available, and to death, dismemberment and loss of sight insurance. Policy at 14, 15. These exclusions do not appear in the other two "bodily injury" sections which provide for no-fault and uninsured motorist insurance.

Considering the policy behind no-fault and uninsured motorist statutes, the court is not surprised by the absence of this exclusion to these insurance plans. More significantly, though, the Policy contains several coverage options which an insured may select and upon which a premium is no doubt based. Each coverage selection scope is clarified by definitions and exceptions which apply to that particular option. Obviously this makes sense because each section or coverage option contemplates a different scope of insurance coverage. The Policy *begins* by specifying the definitions that are to be used throughout the Policy. Any variance in scope or coverage between the sections merely represents the differences between the coverage options. These Policy provisions are not ambiguous. Therefore, the specific definitions or exclusions within each section do not aid in the interpretation of the other sections.

### A. *Case Law*

Because the Policy is not ambiguous, the issue before the court is whether plaintiff qualifies for no-fault insurance under the Policy. The Milsteads' Policy includes coverage P, no-fault coverage. Under this insurance option, the insurer promises that:

> [It] will pay in accordance with the [Utah Automobile No–Fault Insurance Act] for *bodily injury* to an *insured* caused by accident resulting from the maintenance or use of a *motor vehicle* as a *motor vehicle*....

The definitions with this section define Insured[4] to include any person other than the insured, insured spouse, or relative who is *occupying* the insured vehicle with the insured's permission.[5] Because the parties dispute neither that the Policy covers the pick-up truck nor that plaintiff's involvement with the truck was with Mr. Milstead's permission, to collect insurance for his alleged injuries, plaintiff must establish 1) he sustained an injury arising out of the maintenance or use of the vehicle and 2) he was "occupying" the vehicle at the time of the injury.

### 1. *Maintenance or Use*

Courts generally interpret maintenance to include "any activity designed to preserve or repair a motor vehicle." 7 Am. Jur.2d *Automobile Insurance* § 134, 614 (1980).[6] The attachment of a trailer hitch, a related activity that would seem to fall outside a strict interpretation of repair, also has been considered maintenance. *Tubbs*, 304 So.2d 589.

Although the line between use and maintenance is usually clear, some courts apply the "use" category when a repair occurs during a journey. Thus, in *Gering v. Merchants' Mutual Ins. Co.*, 75 A.D.2d 321, 429 N.Y.S.2d 252 (1980), the court found an emergency repair of a front wheel bearing during a trip to be "use" because it was "directly connected with the continued 'use' of the vehicle." Courts also examine the purpose behind the injury causing act to determine whether it constitutes use or maintenance.[7] In *State Farm Mutual Automobile Ins. Co. v. Pan American Ins. Co.*, 437 S.W.2d 542 (Tex.1969), the court decided that an attendant refueling the insured vehicle was maintenance, not use.[8] Other courts find an activity to be ownership, maintenance, or use without specifying which category affords the coverage. *See, e.g., Farmers Fire Ins. Co. v. Kingsbury*, 118 Misc.2d 735, 461 N.Y.S.2d 226 (1983) (*affirmed* 105 A.D.2d 519, 481 N.Y. S.2d 469 (1984)) (insured removing tire from rim).

Similarly, "use" is defined broadly to include "participat[ion] in operation" of a vehicle to a certain extent,[9] or "employment of the vehicle as a means of transportation, or some other purpose incident to transportation."[10] Some courts define the scope of

---

**4.** The Policy definitions which apply to the entire Policy state that Insured "means the *person, persons*, ... defined as *insureds* in the specific coverage.

**5.** "Any other person" is also covered if that person is a pedestrian struck by the insured vehicle. Pedestrian is defined as a person who is not occupying a motor vehicle.

**6.** *See e.g., Alabama Farm Bureau Mutual Casualty Ins. Co. v. Tubbs*, 304 So.2d 589 (Ala.1974) (The "word 'maintenance' ... should be given [the meaning] that will give effect to the purpose of the insurance, which is to afford protection."); *Knight v. Thomas*, 141 So.2d 134 (La.Ct. App.1961) (Non-passenger plaintiff's assistance to repair the insured vehicle rear axle "clearly had to do with the maintenance of the vehicle."); *Morris v. American Liability & Surety Co.*, 322 Pa. 91, 185 A. 201 (1936) (Maintenance "covers all acts which come within its ordinary scope and meaning.... to preserve or keep in an existing state or condition and embraces all acts of repair and other acts to prevent a decline, lapse, or cessation from that state or condition.") (*accord Queen Insurance Co. v. Creacy*, 456 S.W.2d 538 (Tex.Civ.App.1970). *See generally*, 6B Appleman, Insurance Law and Practice § 4315 (1979). On the other hand, negligent repair which subsequently results in injury, gen-

erally is not covered. *See* cases cited in Annotation, *Automobile liability insurance: what are accidents or injuries "arising out of ownership, maintenance, or use" of insured vehicle*, 15 A.L.R. 4th 10, 19 § 2 (1982).

**7.** *See Chase v. Dunbar*, 185 So.2d 563 (La.Ct. App.1966) ("[A]ttempting to start a vehicle ... [is] "use" or "maintenance" according to the circumstances in each case including ... the intent, purpose and objective of the person concerned.")

**8.** *But see Red Ball Motor Freight v. Employees Mut. Liability Ins. Co.*, 189 F.2d 374 (5th Cir. 1951) (Improper closing of gas valve after refueling insured truck in journey preparation was "use."); *Wiedenhaupt v. Vander Loop*, 5 Wis.2d 311, 92 N.W.2d 815 (1958) (Falling through a wooden truck platform while loading was associated with "use.")

**9.** *Wall v. Windmann*, 142 So.2d 537 (La.Ct.App. 1962).

**10.** *Truck Ins. Exchange v. Aetna Casualty & Surety Co.*, 13 Wash.App. 775, 538 P.2d 529, 533 (1975). *See also McNeill v. Maryland Ins. Guaranty Ass'n*, 48 Md.App. 411, 427 A.2d 1056 (1981) (Using insured vehicle to jump start an-

the term "use" by a "reasonable expectations test" that includes those meanings the parties to the insurance contract would have contemplated. *Dairyland Ins. Co. v. Esterling*, 205 Neb. 750, 290 N.W.2d 209 (1980). One treatise summarizes the court interpretations of "use" as "the general catch-all of the insuring clause ... construed to include all proper uses of the vehicle not falling within [another] definitio[n] ... [yet] limited to the purpose for which the coverage is designed." 6B Appleman, Insurance Law and Practice § 4316 at 341–42 (1979).

A "use" subsection which has developed is the "use of equipment in, on, or attached to [a] motor vehicle." 15 A.L.R. 4th § 18 at 10, 63. A connection must exist between the injury and the ownership, maintenance, or use of the equipment. *Id.* at 64.[11] Also, if the accident-causing equipment is separate from the vehicle, it must be "used, managed, controlled, or operated as a motor vehicle" to be covered. *Neumann v.*

*Wisconsin Natural Gas Co.*, 27 Wis.2d 410, 134 N.W.2d 474 (1965).

Finally, even though some policies do not specify coverage for loading or unloading, when these acts are a reasonable construction of the policy for which the parties contract they may be covered uses. 15 A.L.R. 4th § 23[b] at 10, 91 (*see* cases cited within). Consequently, courts review loading or unloading accidents on a case-by-case basis to determine if they result from contemplated vehicle use. *Id.* § 25 at 93–97.[12] The loading/unloading cases are interesting because, like plaintiff's alleged accident, these often involve accidents which occur while an insured vehicle is stationary and not part of an ongoing trip, yet are covered incidents if related to contemplated vehicle use.[13]

In either the use or the maintenance context, there must be some nexus between the injury and the use or maintenance of the vehicle in order for the injury to "arise out of" maintenance or use.[14]

other car was within the contemplation of the insurance carrier.) (*accord* that jump starting is a covered use, *Pope v. Stolts*, 712 S.W.2d 434 (Mo.Ct.App.1986); *Hedlund v. Milwaukee Mutual Ins. Co.*, 373 N.W.2d 823 (Minn.Ct.App.1985)); *United Services Automobile Ass'n v. United States Fire Ins. Co.*, 36 Cal.App.3d 765, 111 Cal. Rptr. 595 (1973) (Use "is not confined to motion on the highway, but extends to any activity in utilizing the insured vehicle in the manner intended or contemplated by the insured." (citation omitted)).

**11.** So, for example, in *Oklahoma Farm Bureau Mutual Ins. Co. v. Mouse*, 268 P.2d 886, 889 (Okla.1953), the Oklahoma Supreme Court approved cases that hold "if the cause of the injury [is] something physically attached to or immediately connected in some manner with the motor vehicle or its operation, the injury [is] a result of the use of the vehicle." *See also Auto-owners Ins. Co. v. Pridgen*, 339 So.2d 1164 (Fla.Dist.Ct. App.1976) (injury when insured disconnecting wire); *Casualty Reciprocal Exchange v. Waggoner Drilling Co.*, 340 P.2d 490 (Okla.1959) (injury resulting from the drive chain breaking is within the insurance policy). Again, however, it must be a use that is contemplated in the insurance policy. *Green v. De Felice*, 466 So.2d 1373 (La.Ct.App.1985).

**12.** In *Mission Ins. Co. v. Aid Ins. Services*, 120 Ariz. 220, 585 P.2d 240 (1978), the Arizona Supreme Court found an accident which resulted from valve operation to be "an integral part of the unloading process," which was associated

with contemplated vehicle use. The court invalidated an insurance policy which excluded coverage for unloading and loading because it violated the state Safety Responsibility Act by effectively denying coverage for injuries sustained while not on the highway. *Id.* at 242. But one annotation notes: "Merely loading or unloading a vehicle does not, in and of itself, constitute "use" of that vehicle for purposes of liability insurance coverage." 15 A.L.R. 4th 1989 Supplement § 10[b] at 5 (*citing Florida Crushed Stone Co. v. Commercial Standard Ins. Co.*, 432 So.2d 690 (Fla.Dist.Ct.App.1983)). *See also Employers' Liability Assur. Corp. v. Indemnity Ins. Co.*, 228 F.Supp. 896 (D.Md.1964).

**13.** *See, e.g.,* cases cited in 15 A.L.R.4th § 25 ("Arising from, or occurring during, unloading of motor vehicle").

**14.** *See, e.g., Pacific Indemnity Co. v. Truck Ins. Exchange*, 270 Cal.App.2d 700, 76 Cal.Rptr. 281 (1969) (The "injury [must be] a natural and reasonable incident or consequence of the use of the automobile for the purposes shown by the declarations ... [and not] directly caused by some independent act, or intervening cause wholly dissociated from, independent of and remote from the use of the automobile.'" (footnote omitted) (*accord Associated Independent Dealers, Inc. v. Mutual Service Ins. Cos.*, 304 Minn. 179, 229 N.W.2d 516 (1975)); *O'Dwyer v. Manchester Ins. Co.*, 303 So.2d 347 (Fla.Dist.Ct. App.1974) ("'[B]ut for' the use of the vehicle ... the accident would not have happened.").

Rather than a direct causal connection, only some connection or a substantial nexus is required.[15] According to one treatise, however, "[i]t is not ... necessary that the vehicle be moving at the time of the accident to constitute use." 6B Appleman § 4316 at 346–47 (footnote omitted).[16] Nor is "use" confined to the highway, "but extends to any activity in utilizing the insured vehicle in a manner intended or contemplated by the insured." *Id.* at 343 notes. (*citing Hartford Acc. & Indem. Co. v. Civil Service Emp. Ins. Co.*, 33 Cal. App.3d 26, 108 Cal.Rptr. 737 (1973); *United Services Auto. Ass'n v. United States Fire Ins. Co.*, 36 Cal.App.3d 765, 111 Cal. Rptr. 595 (1973)).

In sum, an injury-causing activity is maintenance or use if it falls within 1) a contemplated maintenance or use and 2) the case-developed meaning for these terms.

## 2. *Occupying*

No-fault insurance is intended to recompense an injured party regardless of fault. Annotation, *What constitutes occupancy of motor vehicle for purposes of no-fault automobile insurance coverage*, 35 A.L.R. 4th 364, 367–68 § 2 (1985). No-fault insurance statutes and policies often limit coverage to those "occupying" the insured vehicle at the injury time.[17] Mr. Milstead's policy contains this requirement. Occupancy, however, does not mean the injured party must establish that he or she was in the vehicle when the injury occurred. 35 A.L.R. 4th § 3[b] at 373 (*citing Tyler v. Ins. Co.*, 311 Pa.Super. 25, 457 A.2d 95 (1983)). Pursuant to Mr. Milstead's Policy, for plaintiff to be an occupant, he must establish that he was "in, on, entering or alighting from" the vehicle at the time of the alleged accident. Policy at 2.[18] These terms are grouped in case law and commentary as "in, on, or upon" cases and "entering into[19] or alighting from" cases.

---

**15.** With respect to causal connection, see 6B Appleman § 4317 at 360–63 ("The words 'arising out of' when used in such a provision are of broader significance than the words 'caused by,' and are ordinarily understood to mean originating from, incident to, or having connection with the use of the vehicle."); *State Farm Mut. Auto. Ins. Co. v. Fernandez*, 767 F.2d 1299, 1302 (9th Cir.1985) ("The term 'arising out of' requires at least a 'minimal causal connection' between the use of the vehicle and the injury.")

In *Gilbertson v. State Farm Mutual Auto Ins.*, 845 F.2d 245, 248 (10th Cir.1988), the Tenth Circuit, applying Minnesota law, stated that "[t]he accident must [be] a natural and reasonable incident or consequence of the use of the vehicle." One annotation suggests that:

For an injury to fall within the "use" coverage of an automobile policy (1) the accident must have arisen out of the inherent nature of the automobile, as such, (2) the accident must have arisen within the natural territorial limits of an automobile, and the actual use must not have terminated, (3) the automobile must not merely contribute to cause the condition which produces the injury, but must itself produce the injury. The causal connection between the use of the vehicle and the accident required by the third prong of this test requires something far short of proximate cause and has been defined as "some connection" or a "nexus" between the two....

15 A.L.R.4th 1989 Supplement § 16 at 5–6 (*citing Government Employees Ins. Co. v. Batchelder*, 421 So.2d 59 (Fla.Dist.Ct.App.1982)). *See also Brack v. Allstate Ins. Co.*, 666 F.Supp. 703, 705 (M.D.Pa.1986) (In Pennsylvania, no-fault

benefits "requir[e] [a] connection between the accident and the vehicle need not rise to level of proximate causation, but that 'but for' causation is enough to satisfy the policy provision." (citations omitted)); *Lumbermen's Mutual Casualty Co. v. Logan*, 88 A.D.2d 971, 451 N.Y.S.2d 804 (1982) (use must be proximate cause of injury); and cases cited in 6B Appleman § 4316 at 350. Likewise, with respect to maintenance, rather than look for a direct causal connection, one court held coverage applies if the nexus is substantial between the act and the injury. *American Home Assur. Co. v. Hartford Ins. Co.*, 190 N.J.Super. 477, 464 A.2d 1128 (1983).

**16.** *See also Brack*, 666 F.Supp. at 706 (stationary truck with pulley which caused an accident was an accident caused by the truck).

**17.** Some policies include this limitation only for non-named insureds. The Milsteads' Policy applies this limitation to any party seeking coverage under the no-fault provision.

**18.** In Utah "occupying" also is defined by statute as "being in or on a motor vehicle as a passenger or operator, or being engaged in the immediate acts of entering, boarding, or alighting from a motor vehicle." U.C.A. § 31A–22–301 (1988 supplement). "'Operator' means every person who is in actual physical control of a motor vehicle." U.C.A. § 41–12a–103 (1988).

**19.** "Getting into" has also been used in an insurance policy and was interpreted by one court more narrowly than "entering into." *Gleason v.*

a. *"Entering into or alighting from."* To establish the acts of entering into or alighting from an insured vehicle, the courts generally require that the injured party was in the immediate vicinity of the vehicle and was engaged in an activity directly related to the use or operation of the vehicle. The court developed standards seek facts to support a "reasonable connection" between the claimant and the vehicle or that the injured party was "vehicle oriented" as contrasted with "highway oriented." 35 A.L.R. 4th § 3[a] at 372.

The factors that courts often consider include: the "claimant's distance from the car [at the time of injury], the direction of the exit path . . ., and the amount of time elapsed between the moment of exit and the collision." Annotation, *What constitutes "entering" or "alighting from" vehicle within meaning of insurance policy, or statute mandating insurance coverage,* 59 A.L.R. 4th 149, 157 § 2[a] (1988) (*see* cases cited therein). Alternatively, courts require that the claimant was within either "a reasonable geographic perimeter around an insured vehicle" or a "zone of connection." *Id.* at 164; 35 A.L.R. 4th § 3[a] at 370. Other factors courts examine are whether the "alighting" process was completed at injury time. Courts thus inquire if the claimant had reached a "zone of safety" or completed "exit-related steps" so that the claimant was no longer vehicle oriented. 59 A.L.R. 4th § 20 at 182. With respect to entering the vehicle, the claimant usually must establish that he or she was "approaching the vehicle or intending to enter it." *Id.* § 6[a] at 166–67. All these factors must be looked at on a case-by-case basis.

Plaintiff and defendant focus attention on cases of this type which analyze whether an injured party was "entering into" or "alighting from" an insured vehicle. During an emergency repair enroute this

analysis might be, and is sometimes, useful. Within the maintenance scenario, however, and particularly when a vehicle is not en route, the better inquiry would be whether the injured party was on or upon the motor vehicle at the time of the injury.

b. *"In, On, or Upon."* In fact, these cases usually fall into the use or maintenance activity category. Courts logically find that the terms "in," "on," or "upon" should mean something different than "entering into" or "alighting from." Annotation, *Scope of clause of insurance policy covering injuries sustained while "in or on" or "in or upon" motor vehicle,* 39 A.L.R.2d 952, 957 § 4 (1962) (discussing *Christoffer v. Hartford Acci. & Indem. Co.,* 123 Cal.App.2d Supp. 979, 267 P.2d 887 (1954)). For example, in *Hastings v. International Service Ins. Co.,* 490 So.2d 656, 659 (La.Ct.App.1986) the Louisiana state court, applying an uninsured motorist statute, held that a gas station attendant who was injured while filling the insured vehicle with gasoline was occupying the vehicle. His physical contact was enough without requiring that he had "alighted from" or intended to "enter" the vehicle.

Under the "in," "on," or "upon" query, occupancy turns on whether a claimant was injured in close physical proximity to an insured vehicle. Generally courts require "some sort of physical contact with the [insured] automobile." 39 A.L.R.2d § 4. "Upon" or "on" should not be restricted to "on top," however, because "there [are] many positions, not normally taken while using an automobile . . . which could still be termed 'upon' the vehicle." 39 A.L.R.2d § 4 at 958 (*see* cases discussed therein). Upon also is interpreted to include "within a reasonable geographic perimeter" coupled with "a relationship with the vehicle." 39 A.L.R.2d Later case service § 4 at 314 (1989).[20]

*Merchants Mut. Ins. Co.,* 589 F.Supp. 1474, 1480–81 (D.R.I.1984).

**20.** For example, "it has been held that the requirements of the term[s] ["in or upon"] were met where a person was injured while leaning against the fender . . . attempting to effect mechanical repairs." 7 Am.Jur.2d *Automobile In-* *surance* § 137, 615 (1980). Not covered is when the injury occurs "a substantial distance from the vehicle and [the injured] is engaged in an activity which is not directly related to the vehicle's operation." *Id. See also Hart v. Traders and General Ins. Co.,* 487 S.W.2d 415 (Tex.Ct.App.1972) (individual installing new fuel pump was "upon" vehicle).

"Upon" should be looked at in the context of the particular vehicle "use" or "maintenance." *Id.* at 959. One treatise states: "In determining whether a person was in such a position in relation to [the] automobile as to be injured in its use, consideration must be given, not only to what [the] person was doing when injured, but also to his purpose and intent." 6B Appleman § 4317 at 367 (footnote omitted). The required physical contact need not be at the moment of injury, but it is sufficient that once the injury is established as occurring during use or maintenance, the physical contact was prior to, or during, the injury. There must, however, be "some connection with the insured vehicle other than the ultimate impact." 35 A.L.R. 4th § 3[b] at 374. Analogous to the concepts of "entering into" or "alighting from," it would be illogical to deny coverage for each moment the physical contact lapsed but grant coverage for intervening contact periods.

In sum, the case law suggests that both the maintenance or use inquiry and the occupancy tests are determined from the peculiar facts of each case. Before coverage applies, in addition to satisfying the occupancy requirement, the causal connection between the injury and contemplated use or maintenance must be established. With respect to the "in" or "upon" tests for occupancy, case-law analysis and common sense convince the court that the "physical contact" test applied by most courts would most precisely meet the parties' intent in covering injuries arising from maintenance or use.

### B. *Mr. Wagenman*

■ Plaintiff must establish that he was using or maintaining the pickup truck when his injury occurred. First, defendant disputes whether the alleged injury arose in fact out of maintenance, use, or the operation of the vehicle. Presumably, changing the rear wheel axle shock so that the truck could accommodate the trailer might be preparing the vehicle for an intended use.

The record does not address the intended uses of the pick-up truck. Consequently, this is an issue for trial.[21] Second, defendant appears to dispute that plaintiff's involvement in any maintenance activity is sufficient for recovery. Plaintiff's incident version is that he directly participated in the replacement of the rear wheel shock which constituted maintenance. The evidence with respect to this issue consists of plaintiff's deposition and affidavit, and Mrs. Milgate's affidavit. As defendant notes, plaintiff's testimony in these documents is inconsistent regarding his involvement in the axle replacement. Consequently, there are questions of fact regarding whether Mr. Wagenman was "maintaining" the Milsteads' pick-up truck and, if so, whether his injury substantially resulted from that activity.

Plaintiff also must establish that he was occupying the pickup truck when his injury occurred. Examined from the "entering into" or "alighting from" standards, the question is whether sufficient evidence exists to send to the jury the issue regarding plaintiff's intention to re-enter the truck and drive it following the maintenance.

Defendant claims plaintiff was not an occupant because 1) the shocks were not changed during an ongoing trip and 2) plaintiff did not have the intent to drive the vehicle after the shocks were replaced. Using the time/distance and reasonable connection tests, defendant urges that the plaintiff did not engage in "a course of conduct reasonably incidental to leaving and alighting from the car...." Defendant Memorandum in Opposition to Plaintiff's Cross–Motion at 11–12. Plaintiff states in his deposition, however, that if he had not been injured, he would have driven the pick-up truck again in order to drive the vehicle into the position to attach the fifth wheel trailer. Plaintiff Deposition at 119. Furthermore, his affidavit states that prior to the incident in question and with Mr. Milgate's permission, he drove the truck, retrieved tools from the cab, and performed maintenance under the truck.

**21.** In Colorado, for example, the contemplated use depends on the factual circumstances and as with most questions regarding intent, it is a question for the jury to decide. *Trinity Universal Ins. Co. v. Hall,* 690 P.2d 227 (Colo.1984).

In conclusion, examining the record, the court cannot say as a matter of law that plaintiff intended to re-enter and drive the truck following the changing of the rear wheel axle shock. On the other hand, there is enough evidence that a reasonable jury might find that plaintiff intended to do so.

Examined from the "in or upon" standards, the question is whether material facts exist regarding plaintiff's physical contact with the pick-up truck immediately prior to or during his alleged injury. Plaintiff alleges that he was under the car and pulling on the rear axle when he fell to the cement driveway. Defendant disputes the extent of plaintiff's involvement and claims that he only "observed" Mr. Milgate repair the axle, on occasion handed tools to the latter and, finally, briefly crawled under the vehicle at Mr. Milstead's behest to assist in pulling on the old shock. Defendant, in essence, reduces plaintiff's involvement in the activity to that of a bystander. Looking at the record, questions of fact exist regarding the plaintiff's involvement in this incident and the extent of plaintiff's physical contact with the pick-up truck prior to or at the time of his alleged injury.

### CONCLUSION

Considering the record in the light most favorable to the plaintiff, sufficient questions of fact exist regarding whether plaintiff was involved in maintenance or use of the pickup truck, and, if so, whether he was "occupying" the vehicle at the time of his alleged injury. If proved, these would establish the plaintiff's case. Likewise, looking at the record in the light most favorable to the defendant, non-movant for the plaintiff's summary judgment, sufficient questions of fact exist regarding whether plaintiff was only a bystander to Mr. Milstead's maintenance or use of the pick-up truck or whether plaintiff did not "occupy" the vehicle at the time of his injury. If proved, such facts would bar plaintiff's recovery under the Policy. Therefore,

IT IS HEREBY ORDERED that plaintiff's and defendants's cross motions for summary judgment are DENIED.

This order will suffice as the court's order on these motion and no further order need be prepared by counsel. The case is set for pretrial on April 5, 1990, at 8:00 a.m. and jury trial on April 30, 1990, commencing at 9:00 a.m. If these dates are inconvenient to counsel, other dates should be arranged with the court's secretary.